**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Thelma WINGATE, Defendant–Appellant.**

No. 91–9155.

United States Court of Appeals, Eleventh Circuit.

Aug. 17, 1993.

Lori Obenauf, Macon, GA, for defendant-appellant.

Harry J. Fox, Jr., Asst. U.S. Atty., Macon, GA, for plaintiff-appellee.

Before TJOFLAT, Chief Judge, KRAVITCH, Circuit Judge, and RONEY, Senior Circuit Judge.

TJOFLAT, Chief Judge:

This case involves a Georgia county sheriff, his secretary, a credit card, a set of car tires, and the intrigue that bound them together. A federal jury convicted a Georgia county sheriff on twenty counts of mail fraud for floating his personal credit card debts through payments from a county-funded checking account for over four years. The same jury convicted the sheriff's secretary of one count of mail fraud for fraudulently charging a set of car tires for her personal automobile to the sheriff's personal, but county-funded, credit card. The secretary appeals the district court's denial of her motion for a judgment of acquittal. We affirm.

I.

The underlying facts of this case are set out fully at *United States v. Cox*, 995 F.2d 1041 (11th Cir.1993). In brief, Cary V. Cox served as Sheriff of Mitchell County, Georgia, and appellant Thelma Wingate served as his secretary, during all relevant times. Cox obtained a personal VISA credit card from Citibank. The Mitchell County Board of Commissioners previously had refused to authorize Cox to obtain a business credit card, did not assume responsibility for paying off Cox's personal VISA card debt, and had never permitted Cox to charge personal expenses to the county. Cox paid off his personal VISA card debt with Mitchell County funds, not with his own money.

Short of money and with her car tires in a terrible state of disrepair, Wingate asked Cox to let her charge a new set of tires for her personal car to his credit card. She told Cox that she would pay for the tires when she had sufficient funds. On July 28, 1987, Wingate charged $397.59 to Cox's credit card. On June 21, 1989, a special agent with the Georgia Bureau of Investigation (GBI) interviewed Wingate. During the interview, Wingate admitted that she had used the credit card to charge her car tires. On September 28, 1989, which is more than two years after she had purchased the tires and over three months after she admitted to the GBI special agent that she had charged the tires, Wingate sent a check for $397.59 to Citibank; she did not pay Citibank the nearly $220 in interest charges that had accrued.

On June 28, 1990, a federal grand jury indicted Cox and Wingate on twenty-four counts of mail fraud. Count one of the indictment alleged that Cox and Wingate conspired to defraud Mitchell County. Counts two through thirteen alleged that Cox and Wingate perpetrated mail fraud on Mitchell County when they received account statements from Citibank. Counts fourteen through twenty-four correlatively alleged that Cox and Wingate committed mail fraud when they mailed payment checks to Citibank. Cox and Wingate pled not guilty.

On March 6, 1991, Wingate filed a pre-trial motion for severance pursuant to Fed.

R.Crim.P. 14 (1993).[1]  She argued that a joint trial with Cox would cause her to suffer "irreparable and unfair prejudice," expose her to an "undue risk of 'guilt by association,'" and deprive her of valuable exculpatory testimony.  The district court found that Wingate's allegations were conclusory, indicated that it could sufficiently protect her interests with cautionary jury instructions, and denied her motion.

A five-day jury trial began on July 31, 1991.  After the United States presented its case in chief, Cox and Wingate moved for directed verdicts, but the court reserved its ruling until the close of the evidence.  After the close of all the evidence, the district court dismissed count one against Cox, dismissed all counts except count eight (which dealt with the tires) against Wingate, and submitted the case to the jury.  The jury found Cox guilty of twenty of the twenty-three counts, and found Wingate guilty of count eight.  Cox moved for a judgment of acquittal notwithstanding the verdict, see Fed.R.Crim.P. 29(c) (1993),[2] or, in the alternative, a new trial, see Fed.R.Crim.P. 33 (1993),[3] as to each count of conviction.  Wingate moved for a judgment of acquittal only.

The district court granted Cox's motion for a new trial, but denied Cox's and Wingate's motions for a judgment of acquittal.[4]  Wingate appeals.

## II.

Wingate asks us to reverse her conviction on two grounds, to wit, the district court erred by denying her motions for (1) sever-

ance, and (2) a judgment of acquittal.[5]  In subpart A, we examine the district court's denial of Wingate's motion for severance, and, in subpart B, we address the court's denial of her motion for judgment of acquittal.

## A.

█ We review the court's denial of Wingate's motion for severance "for abuse of discretion and will not reverse unless the resulting joint trial caused the defendant 'compelling prejudice.'"  *United States v. Hogan,* 986 F.2d 1364, 1375 (11th Cir.1993) (quoting *United States v. Hernandez,* 921 F.2d 1569, 1578 (11th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2271, 114 L.Ed.2d 722 (1991)).  The general rule is that "defendants jointly indicted should be so tried."  *United States v. Marszalkowski,* 669 F.2d 655, 660 (11th Cir.), *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 167 (1982).  Wingate must demonstrate that either (1) the district court abused its discretion based on what it knew before trial, or (2) that her joint trial with Cox actually confused the jury and that she suffered compelling prejudice thereby.  *See id.*  She has established neither.

█ First, the district court found, and we agree, that, in her pre-trial motion for severance, Wingate advanced only conclusory allegations that she would suffer prejudice.  "To establish an abuse of discretion, the defendants must show that they suffered specific and compelling prejudice as a result of the denial of severance."  *United States v. Simon,* 839 F.2d 1461, 1472 (11th Cir.), *cert.*

---

1.  Rule 14 provides that

    If it appears that a defendant of the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election of separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

2.  Rule 29(c) provides that

    If the jury returns a verdict of guilty ..., a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged....  If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal.

3.  Rule 33 provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice."

4.  The United States appealed the district court's grant of Cox's motion for a new trial in *Cox,* 995 F.2d 1041 (11th Cir.1993), a companion case before this court.

5.  Wingate also contends that the district court should have granted her motion for a "directed verdict" on count eight of the indictment at the close of the evidence.  Fed.R.Crim.P. 29(a) (1993), however, abolished directed verdicts, substituting judgments of acquittal in their place.  In subpart B, we dispose of Wingate's appeal of the district court's denial of her motion for a judgment of acquittal.

denied, 488 U.S. 861, 109 S.Ct. 158, 102 L.Ed.2d 129 (1988). The district court found that Wingate "failed to establish a factual basis for 'compelling prejudice,'" and denied her motion. We defer to the district court's finding on this point.

Second, in her brief to this court, Wingate correctly points out that the vast majority of the evidence presented at trial concentrated on Cox. She concludes that the prosecution's evidentiary focus on Cox must have unduly prejudiced the jury against her.[6] We disagree. Wingate has the onus of demonstrating that she suffered compelling prejudice from the joint trial. "This is a heavy burden, and one which mere conclusory allegations cannot carry." Hogan, 986 F.2d at 1375. Wingate's supposition that prejudice flowed from the prosecution's focus on Cox at trial does not warrant our interference with the district court's discretion. See id. (rejecting similar claim); Simon, 839 F.2d at 1472–73 (rejecting claim that "spillover effect" amounted to "compelling prejudice," and holding that "[a] judge need not grant the motion for severance even if the jury's task of distinguishing the evidence is a difficult one."). On this record, we cannot say that Wingate suffered compelling prejudice because of the joint trial.

### B.

■ In reviewing the district court's denial of Wingate's motion for a judgment of acquittal, we view the evidence and resolve all credibility choices in the light most favorable to the verdict of guilt. See United States v. Gates, 967 F.2d 497, 499 (11th Cir.

1992); Simon, 839 F.2d at 1465. If a reasonable jury, viewing all evidence and drawing all inferences in the United States' favor, could find Wingate guilty beyond a reasonable doubt, then we will not upset the verdict. Gates, 967 F.2d at 499; Simon, 839 F.2d at 1465.

■ Mail fraud under 18 U.S.C. § 1341 (1988)[7] entails the use of the mails in a scheme intentionally to defraud another of money or property. See United States v. Ethridge, 948 F.2d 1215, 1216 (11th Cir. 1991); Pelletier v. Zweifel, 921 F.2d 1465, 1498 (11th Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991). Section 1341 is designed to punish those who use the United States Mails to advance their fraudulent schemes. Parr v. United States, 363 U.S. 370, 389, 80 S.Ct. 1171, 1182, 4 L.Ed.2d 1277 (1960); United States v. O'Malley, 707 F.2d 1240, 1246 (11th Cir. 1983).

■ To establish that Wingate committed mail fraud in violation of section 1341, the United States had to prove that she (1) intentionally participated in a scheme to defraud Mitchell County of money, and (2) used the mails to further that scheme. See United States v. Downs, 870 F.2d 613, 615 (11th Cir.1989); Simon, 839 F.2d at 1465. The court found, and the evidence shows, that Wingate prepared Cox's credit card applications and, for forty-eight months, mailed checks drawn on the Sheriff's Office's special account to Citibank. Wingate knew that Cox's credit card was his own personal card and that Mitchell County funded the special account. She purchased a set of tires for her

---

6. Prior to trial in the district court, Wingate also suggested that a joint trial would deprive her of valuable exculpatory testimony, presumably from Cox. We summarily reject this asserted basis for reversing the court's severance ruling. Wingate did not support her motion with affidavits tending to suggest that Cox possessed and was willing to share any exculpatory evidence. Further and fatally, Wingate did not demonstrate that Cox would testify in her defense if the cases were severed. See United States v. Pruitt, 763 F.2d 1256, 1263 (11th Cir.1985) (Defendant claiming prejudice from loss of co-defendant's testimony "must[, among other things] demonstrate ... that a co-defendant would, in fact, testify if the cases were severed."). In any event, it is hard to

fathom the purport of Wingate's objection on this ground because Cox testified at the joint trial.

7. 18 U.S.C. § 1341 (1988) provides that

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, ... shall be fined ... or imprisoned ... or both.

personal automobile with Cox's credit card and let the charge float for more than two years before paying Citibank. She sent a check to Citibank only after she admitted to the GBI special agent that she charged the tires to the credit card. Mail fraud need not rest on the success of the fraudulent scheme; it may be predicated on the mere existence of such a scheme. *See Pelletier*, 921 F.2d at 1498 ("A scheme to defraud need not be carried out to constitute a violation of the mail and wire fraud statutes. These statutes punish unexecuted, as well as executed, schemes."). The district court noted that the evidence could be construed to show "more of a pattern of sloppiness and negligence rather [than] any intent to defraud," but correctly explained that it was "not entitled to upset the verdict merely because another result may appear more just." *Cf. United States v. Hawkins*, 905 F.2d 1489, 1496 (11th Cir.1990) ("The Government need not produce direct proof of scienter in a [mail] fraud case, . . .; circumstantial evidence of criminal intent can suffice.").

Although Wingate may very well be a conscientious person who made "numerous personal sacrifices" for Mitchell County, the jury concluded that Wingate committed mail fraud, and the district court denied Wingate's motion for a judgment of acquittal. Viewing the evidence as we must, we cannot say that this was error.

### III.

We conclude that the district court did not abuse its discretion by denying Wingate's motion for severance, and, viewing the evidence in favor of the verdict, that the jury reasonably could have concluded that Wingate was guilty beyond a reasonable doubt. Accordingly, we affirm.

AFFIRMED.