**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Carlos TAPIA, Alfred Kennedy, Joseph Perez, Defendants–Appellants.**

No. 92–4951.

United States Court of Appeals,
Eleventh Circuit.

July 28, 1995.

---

Lawrence J. Stein, Miami, FL, for Papia.

Richard A. Moore, Miami, FL, for Kennedy.

Robert J. Becerra, Raskin & Raskin, P.A., Miami, FL, for Perez.

Roberto Martinez, U.S. Atty., Linda Collins Hertz and Harry C. Wallace, Jr., Asst. U.S. Attys., Miami, FL, for appellee.

Before KRAVITCH and EDMONDSON, Circuit Judges, and EISELE [*], Senior District Judge.

KRAVITCH, Circuit Judge:

Carlos Tapia, Alfred Kennedy, and Joseph Perez appeal from their convictions and sentences for obstruction of justice by retaliating against a witness, in violation of 18 U.S.C. § 1513(a)(2). We AFFIRM the convictions of each of the Appellants. We also AFFIRM the sentences imposed upon Kennedy and Tapia. Because, however, we hold that the district court erred in enhancing Perez's sentence based upon its finding of more than minimal planning, we VACATE Perez's sentence and REMAND for resentencing.

## I. *Background*

In connection with their attack on Michael Connelly, Appellants and codefendants David Jerrett and Marvin Devine [1] were indicted for (1) tampering with a witness, victim, or an informant with the intent to influence, delay and prevent him from testifying in a federal proceeding, in violation of 18 U.S.C. § 1512(b)(1); (2) tampering with a witness, victim, or an informant with the intent to cause and induce him to withhold his testimony at a federal trial, in violation of 18 U.S.C. § 1512(b)(2)(A); and (3) retaliating against a witness, victim, or an informant for giving information relating to the commission and possible commission of a federal offense to a law enforcement officer, in violation of 18 U.S.C. § 1513(a)(2).

At the time of the attack, Appellants and Connelly were imprisoned in the Monroe County Jail. Connelly had been transferred to that jail on the day of the attack for the purpose of testifying against Billy Ryan in a federal drug case. According to Connelly's trial testimony, while he was playing dominoes in cell block 9, Perez, whom Connelly had known for approximately fifteen years, came over to him and the two spoke for "a little bit" about "the old days." Connelly then noticed Perez using the phone "a couple of times." Connelly finished playing dominoes and moved toward the television. He observed Perez talking to Tapia, Devine, Jerrett, and Kennedy and noticed that they were "all in the back of the [cell in] a little huddle." Perez then called Connelly to the back of the cell and said, "I hear that you're here to testify on Billy Ryan." Connelly further testified that prior to this exchange, he had not mentioned that he intended to testify against Ryan because he was afraid to do so.

Connelly denied his intention to testify against Ryan, but Perez told him that he had "just got off the telephone with Billy Ryan, and he told me you are testifying on him." Kennedy and Tapia also stated that they had spoken to Ryan on the phone "and that Billy is not going to lie." Connelly testified that Devine then hit him on the side of the face and that Tapia and Perez "started swinging" at him. He testified that each of the Appellants hit him and "kept yelling and screaming about Billy Ryan being their friend" and that he "shouldn't be testifying on him." After Kennedy kicked Connelly in the face, prison officials arrived and removed Connelly from the cell.

Perez and Kennedy stipulated that Ryan had acted as their bail bondsman on prior occasions; Connelly testified that Perez "has been around Billy Ryan for a long time. . . . [and] is sort of . . . like his brother."

FBI Special Agent Parenti testified that Devine had confessed to the attack on Con-

---

[*] Honorable Garnett Thomas Eisele, Senior U.S. District Judge for the District of Arkansas, sitting by designation.

[1.] Jerrett and Devine are not parties to this appeal.

nelly. The judge gave a limiting instruction that Parenti's testimony was to be admitted only as evidence with respect to Devine. According to Parenti's testimony, Devine had told Parenti that Connelly entered the cell block while he was in the law library. When he returned to the cell, he was told that Connelly was preparing to provide testimony against Ryan. Devine "began considering beating up Michael Connelly for his testimony" against Ryan, but first placed a call to Ryan to make sure that Connelly did, in fact, intend to testify against Ryan.

Perez and Tapia presented no evidence. Kennedy testified on his own behalf that on the night of the attack, Devine returned from the law library and saw that Connelly had arrived. Devine told Connelly that he had to take a shower and the two exchanged words. Kennedy further testified that Connelly then struck Devine and Devine "retaliated back, and a fight broke out, and myself, Mr. Jerrett and Mr. Tapia jumped in to break the fight up." Kennedy testified that he was not aware that Connelly was planning on testifying against Ryan until after the incident and that Perez did not make any phone calls during this time period.

The jury found Appellants guilty of Count Three, retaliating against a witness, victim or informant, but acquitted on the two other counts. Appellants assert that their convictions must be reversed because: (1) the evidence was insufficient to sustain their convictions and (2) the district judge erred in refusing to sever their trial from that of codefendant Devine. Kennedy further argues that: (1) the judge erred in refusing to permit testimony as to the alleged negligence of the jail authorities in permitting an informant to be placed in a cell with regular prisoners and (2) the venire from which his petit jury was drawn was unconstitutionally composed because African–Americans were underrepresented.

Appellants also contend that the district court erred in calculating their sentences be-

cause the court improperly found Connelly to be a "vulnerable victim" within the meaning of U.S.S.G. § 3A1.1. Perez further asserts that the court erred in enhancing his sentence because it found that he was a leader in the offense and had engaged in more than minimal planning in connection with the attack. Kennedy claims that the district court erred in enhancing his sentence for obstruction of justice based upon the court's finding that Kennedy had perjured himself at the trial.

## II. *Sufficiency of the Evidence*

■■■ We review the sufficiency of the evidence *de novo*, asking whether the evidence, viewed in the light most favorable to the government, was sufficient to establish Appellants' guilt beyond a reasonable doubt. *See United States v. Muscatell*, 42 F.3d 627, 632 (11th Cir.1995), *cert. denied*, —— U.S. ——, 115 S.Ct. 2617, 132 L.Ed.2d 859 (1995). After a careful review of the record, we hold that the evidence was sufficient to sustain Appellants' convictions.

18 U.S.C. § 1513(a)(2) provides: [2]

Whoever knowingly engages in any conduct and thereby causes bodily injury to another person . . . with intent to retaliate against any person for . . . any information relating to the commission or possible commission of a Federal offense . . . shall be fined . . . or imprisoned not more than ten years, or both.

The district judge properly instructed the jury that it had to find, beyond a reasonable doubt, that the defendants knowingly caused bodily injury to Connelly and that they "did so with the intent to retaliate against . . . Connelly for giving information relating to the Federal offenses concerning United States versus Ryan." Appellants do not contend that the evidence is insufficient to support the jury's conclusion that they caused Connelly "bodily injury" within the meaning of 1513(a)(2).[3] Rather, they argue that there

---

**2.** The text of 18 U.S.C. § 1513(a)(2) existing at the time of Appellants' convictions is currently set forth at 18 U.S.C. § 1513(b)(2).

**3.** Tapia and Kennedy pleaded guilty to aggravated battery charges in state court stemming from

their attack on Connelly. Perez pleaded nolo contendere to these charges.

.was insufficient evidence that they beat Connelly in order to *retaliate* against him for providing information to the government about Ryan. They assert that the evidence, at most, would prove that they beat Connelly to *prevent* him from testifying against Ryan, charges for which the jury acquitted.

In *United States v. Brown*, 937 F.2d 32, 37 (2d Cir.), *cert. denied*, 502 U.S. 917, 112 S.Ct. 323, 116 L.Ed.2d 264 (1991), the Second Circuit rejected Brown's contention that the threat he made to his girlfriend, who was cooperating with authorities, did not evince an intent to retaliate, but, at most, demonstrated an intent to dissuade her from testifying. The court stated that "[t]he fact that Brown's threats may additionally have been construed as an attempt to influence [his girlfriend] to withhold future testimony, does not undermine this jury's findings [of an intent to retaliate], since a threat may be construed to intend both retaliation and intimidation." *Id.*

We agree with the reasoning employed by the Second Circuit and with this in mind, we look to the direct and circumstantial evidence supporting the jury's conclusion that Appellants beat Connelly with an intent to retaliate against him for providing information about Ryan to the authorities. *See United States v. Macko*, 994 F.2d 1526, 1533 (11th Cir.1993) (intent may be proven using circumstantial evidence). The evidence at trial revealed that Ryan was aware that Connelly had provided information to the government, which information included "specifics about ... drug deals" between Connelly and Ryan, and that Ryan had spoken to the Appellants immediately prior to the attack. Further, Connelly assisted "the government in cases, ... provid[ing] information about ... criminals who have committed crimes." The jury also heard evidence that snitches were "not very well regarded in jail," and Kennedy himself testified that he did not like "snitches," which he defined as people "who tell[ ] on somebody." Connelly testified that during the attack, Appellants yelled statements such as, "You are testifying against Billy Ryan," and that Ryan was "their friend."

In light of this evidence, we hold that a reasonable juror could have concluded that Appellants attacked Connelly in order to retaliate against him for providing information regarding Ryan's criminal activities to the authorities, which information culminated in Connelly's agreement to testify at Ryan's trial. *See United States v. Johnson*, 903 F.2d 1084, 1087–88 (7th Cir.1990) (evidence sufficient to convict defendants for violation of § 1513(a)(2) in connection with their shooting of potential witness's mother; although there was no evidence that defendants knew of witness's role as government informant, that information was widely known); *United States v. Maggitt*, 784 F.2d 590, 593–94 (5th Cir.1986) (although evidence was "far from overwhelming," a reasonable juror could have concluded that defendant threatened victim in order to retaliate against him for his earlier testimony before grand jury).

### III. *Bruton Violation*

■ Appellants also argue that the district court erred in not granting their motion to sever their trial from that of Devine's, because Devine's confession, admitted through the testimony of Agent Parenti, inculpated them in violation of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), despite the court's order redacting Devine's confession to omit all references to Appellants.

■ We hold that the court did not err in refusing to grant a severance.[4] We review the district court's refusal to grant a severance for abuse of discretion. *See United States v. Wingate*, 997 F.2d 1429, 1431 (11th Cir.1993). "[A] defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 201–02, 107 S.Ct. 1702, 1704, 95 L.Ed.2d 176 (1987) (citing *Bruton*, 391 U.S. at 123). The Supreme Court in *Richardson*, however, made clear that "the

---

4. We therefore do not address the government's contention that Appellants have waived their right to argue this issue by failing to object to the redacted statement.

Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211, 107 S.Ct. at 1709.

Prior to Parenti's testimony concerning Devine's statement, the judge instructed the jury that Devine's confession "is being admitted exclusively as it relates to Mr. Marvin Devine, and not as it relates to all the other defendants." During his charge to the jury, the judge reiterated that Devine's statement "can only be considered as to him, for or against him exclusively, only related to him." A proper limiting instruction was thus given to the jury. Further, Devine's statement was carefully redacted to exclude incriminating references to all Appellants and each plural pronoun was changed to the singular.[5] Because the testimony "read as a first-person narrative of [Devine's] activities," there was no error in refusing to sever Devine's trial from the trials of Appellants. *United States v. Mendoza–Cecelia,* 963 F.2d 1467, 1481 (11th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 436, 121 L.Ed.2d 356 (1992).

## IV.  *Exclusion of Evidence*

■ Kennedy's argument that the district court erred in excluding evidence of the jail's policy regarding the placement of informants within the jail is without merit. The district court held that this evidence was "totally irrelevant" because even if the jail authorities did not follow proper procedures in placing

Connelly into a general population cell, it would have no bearing on Kennedy's guilt.

■ The decision to exclude evidence is reviewed for abuse of discretion. *See United States v. Cannon,* 41 F.3d 1462, 1465–66 (11th Cir.1995). "Evidence which is not relevant is not admissible." Fed.R.Evid. 402. The evidence that Kennedy sought to introduce concerning the jail's procedures for housing incarcerated informants did not have any tendency to make the existence of any fact relevant to Kennedy's guilt more or less probable than it would be without that evidence. *See* Fed.R.Evid. 401 (defining relevant evidence). We therefore conclude that the district court correctly excluded the evidence.[6]

## V.  *Jury Selection*

We also reject Kennedy's contention that the venire from which his petit jury was chosen was unconstitutionally composed because it contained too few African–Americans.

■ In order to establish a prima facie Sixth Amendment case that the venire does not reflect a fair cross-section of the community, the defendant must show "(1) that the group underrepresented is a distinctive group in the community, (2) that the underrepresentation in the venire is not fair and reasonable in relation to the group's number in the community, and (3) that this underrepresentation is due to systematic exclusion of the group from the selection process." *Cunningham v. Zant,* 928 F.2d 1006, 1013 (11th Cir.1991) (footnote omitted).

---

5. At one point Parenti inadvertently said that Devine told Ryan, "we will take care of it." Parenti, however, immediately corrected himself and repeated, "I will take care of it." We cannot say that this lone reference "compels a 'direct implication of the complaining defendant[s].'" *United States v. Mendoza–Cecelia,* 963 F.2d 1467, 1481 (11th Cir.) (quoting *United States v. Vasquez,* 874 F.2d 1515, 1518 (11th Cir.1989), *cert. denied,* 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 840 (1990)), *cert. denied,* — U.S. —, 113 S.Ct. 436, 121 L.Ed.2d 356 (1992). We further conclude that even if this singular use of the word "we" was error, such error was harmless beyond a reasonable doubt. *See United States v. Foree,* 43 F.3d 1572, 1579 (11th Cir. 1995) (*Bruton*) violations are subject to harmless error analysis).

6. To the extent that Kennedy also asserts that the government could not prosecute him because the placement of Connelly in the cell created the situation that led to Connelly's attack, his argument is meritless. *See United States v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973) (defendant's due process rights not violated when authorities supplied defendant with necessary ingredient to manufacture drugs and then prosecuted defendant; the "law enforcement conduct ... stops far short of violating that fundamental fairness, shocking to the universal sense of justice, mandated by ... the Fifth Amendment") (internal quotation omitted).

■ Kennedy has failed to meet this burden. During the jury selection process, Kennedy not only presented no evidence that the percentage of African–Americans on the venire was lower than the percentage of African–Americans in the community,[7] but he simply failed to present *any* evidence that the purported underrepresentation of African–Americans on the venire was due to their systematic exclusion from the selection process.[8]

## VI. *Vulnerable Victim Enhancement*

■ Appellants contend that the district court erred in increasing their base offense levels, pursuant to U.S.S.G. § 3A1.1,[9] based upon its finding that Connelly was a vulnerable victim. They assert that Connelly was no more vulnerable than any other informant, and that the enhancement is therefore prohibited by *United States v. Morrill,* 984 F.2d 1136 (11th Cir.1993) (en banc) (per curiam).

In reviewing the district court's finding of vulnerability, we must given due deference to the district court's determination. *See United States v. Salemi,* 26 F.3d 1084, 1087 (11th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 612, 130 L.Ed.2d 521 (1994). In *Morrill,* this court held that bank tellers, as a class, are not per se vulnerable victims, within the meaning of § 3A1.1 because "[b]ank tellers are typical victims of bank robberies." 984 F.2d at 1138. We stressed, however, that "[e]nhancement is appropriate under section 3A1.1 when a particular teller-victim possesses unique characteristics which make him or her more vulnerable or susceptible to robbery than ordinary bank robbery victims." *Id.*

The district court did not conclude that Connelly was a vulnerable victim because he was a government informant—an arguably typical victim of 18 U.S.C. § 1513(a)(2); rather, the court correctly concluded that Connelly, as an individual, was particularly vulnerable by virtue of his incarceration with Appellants and his inability to escape, and that Connelly was targeted because of this vulnerability. We thus find no error in the court's enhancement pursuant to U.S.S.G. § 3A1.1.

## VII. *Perez's Enhancement for Role in the Offense*

Perez asserts that the district court erred in enhancing his offense level by two levels because the court found he was "an organizer, leader, manager, or supervisor" in the criminal activity. *See* U.S.S.G. § 3B1.1(c). He also contends that the district court erred in enhancing his sentence two points because the evidence does not support the court's finding that he engaged in "more than minimal planning." He further asserts that the court could not enhance his sentence for more than minimal planning because U.S.S.G. § 2J1.2, the guideline under which he was sentenced, does not provide for this enhancement.

### A. *Leader in the Offense*

■ We review the district court's determination of Perez's role in the offense for clear error. *United States v. Young,* 39 F.3d 1561, 1568 (11th Cir.1994). Connelly's testimony revealed that Perez: had a close, brother-like relationship with Ryan; made several phone calls to Ryan; moved around the cell to talk to the other defendants; summoned Connelly to the back of the cell; and

7. During jury selection, Kennedy stated that, "I was not familiar with the make up [of African–Americans in Monroe County]." In his brief, Kennedy repeats that he does "not possess statistics on the number of blacks in the district, division, or jury pools," and does not know the number of persons on the panel.

8. Kennedy's assertion that the district court violated *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986), when it struck an African–American juror after Tapia's defense counsel exercised a peremptory challenge, is also without merit. Even assuming that Kennedy has standing to raise a *Batson* chal-

lenge based upon his codefendant's exercise of a peremptory challenge, Kennedy presents absolutely no evidence that Tapia, who is also African–American, used his peremptory strike in a racially discriminatory manner.

9. U.S.S.G. § 3A1.1 provides:

If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.

was the first to accuse Connelly of testifying against Ryan. In light of this evidence, we conclude that there is sufficient evidence to support the court's conclusion that Perez was a leader in the attack on Connelly. *See* U.S.S.G. § 3B1.1, comment. (n. 4) (factors to be considered in determining a leadership role include: "the nature of the participation in the commission of the offense, the recruitment of accomplices ... [and] the degree of participation in planning or organizing the offense").

### B. *More than Minimal Planning*

■ U.S.S.G. § 1B1.1(f) sets forth three circumstances under which more than minimal planning exists: (1) if the defendant undertook "more planning than is typical for commission of the offense in a simple form"; (2) if "significant affirmative steps were taken to conceal the offense"; or (3) "in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." The district court concluded that "Perez, by his telephone conversation with Ryan, effectuated more than minimal planning in the retaliation against the witness Connelly." We cannot agree.

We review the district court's finding of "more than minimal planning" for clear error. *See United States v. Garcia,* 13 F.3d 1464, 1470 (11th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 2723, 129 L.Ed.2d 847 (1994). This enhancement is "usually applied to sophisticated crimes or offenses requiring repeated acts over a period of time." *United States v. Cropper,* 42 F.3d 755, 758 (2d Cir. 1994). In this case, Perez did not formulate a sophisticated plan or an elaborate scheme. There was no evidence, for example, that Perez took steps to have Connelly placed in the cell with him. Although Perez did place a phone call to ascertain that Connelly planned to testify against Ryan, the phone call was made immediately prior to the attack. The crime therefore did not involve more planning than typical for the commission of this offense. Further, Perez took no steps to conceal the crime from the jail officials and the crime did not involve repeated acts over a period of time. We therefore hold that the court clearly erred in concluding that Perez effectuated more than minimal planning in the retaliation against Connelly. *See id.* at 758–59 (court clearly erred in finding that defendant engaged in more than minimal planning; defendant committed a simple theft and took no steps to conceal the crime).[10] Accordingly, we VACATE Perez's sentence and REMAND for resentencing.

### VIII. *Kennedy's Enhancement for Perjury*

■ Kennedy asserts that the district court erred in enhancing his sentence pursuant to U.S.S.G. § 3C1.1 [11] because there is no objective way to determine whether or not he falsely testified at trial. The district court found, independently of the jury, that Kennedy, "committed perjury warranting a two level increase of the base offense" because he falsely testified that: Connelly hit him first, he rushed in only to break up the fight, the reason for the altercation was Connelly's failure to take a shower, and he did not see Perez and Devine make phone calls.

We review the court's finding that Kennedy falsely testified at trial for clear error. *See United States v. Jones,* 32 F.3d 1512, 1519–20 (11th Cir.1994). We hold that Kennedy's contention is without merit because Connelly's testimony amply supports the district court's conclusion that Kennedy lied about the events in question. *See id.* at 1520 (when court independently found that defendant obstructed justice by committing perjury at trial, enhancement under § 3C1.1 was proper); *United States v. Dobbs,* 11 F.3d 152,

---

10. Because we hold that the district court erred in finding that Perez had engaged in more than minimal planning, we need not address Perez's contention that U.S.S.G. § 2J1.2 does not allow for this enhancement, an argument that Perez failed to raise at sentencing. We also need not consider his contention that the application of enhancements for both minimal planning and a leadership role in the offense constitutes impermissible double counting.

11. U.S.S.G. § 3C1.1 provides for an increase in the offense level by two levels "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense."

155 (11th Cir.1994) (when defendant's testimony was inconsistent with witness's testimony on a fundamental matter and district judge made independent finding that defendant's testimony was perjurious, enhancement under § 3C1.1 was proper).

### IX. *Conclusion*

For the forgoing reasons, we AFFIRM each Appellant's conviction. We also AFFIRM the sentences imposed upon Kennedy and Tapia. Because we hold that the court erred in enhancing Perez's sentence two points based upon a finding of more than minimal planning, we VACATE Perez's sentence and REMAND for resentencing consistent with this opinion.

EISELE, Senior District Judge, concurring:

I concur entirely in Judge Kravitch's opinion but I write to note that my concurrence with Section VIII is a reluctant one based solely on the Circuit's precedent in *United States v. Dobbs*, 11 F.3d 152 (11th Cir.1994). See *U.S. v. Clark*, 792 F.Supp. 637 (E.D.Ark. 1992) with emphasis on discussion of *U.S. v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978) found in *Clark* at pp. 644–650.