[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11990
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-00348-TWT-AJB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL SIMPSON,

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 31, 2019)

Before ROSENBAUM, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

In August 2016, Michael Simpson committed an armed robbery of a confidential informant ("CI") who was working for the Bureau of Alcohol, Tobacco,

Firearms, and Explosives ("ATF").  He pled guilty to conspiracy, assault, theft, and firearms offenses based on that conduct.  *See* 18 U.S.C. §§ 111(a)(1), 371, 924(c)(1)(A)(ii), 922(g)(1), & 2114(a).  Simpson now appeals his 168-month sentence of imprisonment, arguing that the district court committed two errors when calculating his guideline range—applying enhancements for "more than minimal planning" and for "bodily injury" to the victim—and then imposed a substantively unreasonable sentence.  Because the enhancements are supported by the record and the sentence is substantively reasonable, we affirm.

## I.

Just before 11:30 a.m. on August 9, 2016, a CI working for the ATF walked into a trap set by Elgin Byrd and Simpson.  The CI had arranged to buy three guns from Byrd at his apartment on Echo Street in the English Avenue area of Atlanta, where ATF was conducting an undercover operation.  But Byrd did not, in fact, have any guns to sell.  Instead, he and Simpson planned to rob the CI.

Byrd and Simpson kept in contact throughout the morning of the robbery.  They spoke by phone after Byrd and the CI arranged the sale earlier that morning, and then again after the CI notified Byrd that the CI was on the way over.  At around 11:23 a.m., Simpson was observed running to the apartment building and entering the stairwell to Byrd's residence and another apartment.  Less than a minute later,

2

the CI arrived and entered the same way, going to Byrd's apartment. The man who answered the door told the CI that Byrd was in the shower, so the CI waited in Byrd's living room. While the CI waited inside, Simpson left the building, answered a call from Byrd, and spoke for nearly two minutes.

Simpson returned to the apartment building around eight minutes later and retrieved an unloaded gun and a hat from another apartment. When he walked out of the apartment, he was on the phone with Byrd and had the gun tucked in his waistband. Simpson then went behind the building to lay in wait for the CI. Meanwhile, inside the apartment, Byrd pressed the CI to wait, assuring the CI that the guns were on their way. At around 11:40 a.m., the CI decided to leave the apartment and wait in the car. Byrd called Simpson when the CI left.

As the CI walked down the steps from the apartment building, Simpson approached from behind and pressed a gun into the CI's back, ordering the CI to "get down" and "don't look." Keeping the gun pressed against the CI's back, Simpson placed his left hand at the base of the CI's neck and pushed the CI to the ground. Then, pointing the gun at the back of the CI's head, Simpson went through the CI's pockets. Simpson took $600 in government funds along with a cell phone and a Bluetooth surveillance device. When nearby ATF agents went to rescue the CI, Simpson fled the scene and ditched the gun and spoils, though the money was

3

never recovered.  Simpson was arrested later that afternoon.  The CI was taken to the emergency room and received medical treatment.

## II.

After Simpson pled guilty without the benefit of a plea agreement, the United States Probation Office prepared a presentence investigation report ("PSR").  In calculating Simpson's offense level under the guidelines, the probation officer recommended two increases relevant to this appeal: (1) a two-level increase for "more than minimal planning," U.S.S.G. § 2A2.2(b)(1); and (2) a three-level increase because the victim sustained "bodily injury," *id.* § 2A2.2(b)(3)(A).

Simpson objected to both increases, arguing that the evidence was insufficient to support them.  The government responded in support of the PSR.  It asserted that more than minimal planning was involved because Byrd and Simpson conspired to lure the CI to the apartment complex to rob the CI and then coordinated their actions by phone to effectuate the robbery.  And it contended that the CI suffered bodily injury because, after the robbery, she presented to the emergency room complaining of severe pain, a doctor examined her and ordered x-rays, she was given Vicodin and Valium, and she was prescribed additional pain medication and released with a shoulder immobilizer.  The government supported these arguments at sentencing with video footage from outside the apartment building, audio from the CI's

4

recording device, a recording and transcript of Byrd's post-arrest interview, and medical records of the CI's treatment.

At sentencing, the district court overruled Simpson's objections and applied the two increases. The court agreed with the government that the offense involved more than minimal planning, finding that the offense involved a specific plan between Simpson and Byrd to rob a particular person who was there for a specific reason. It further agreed that the CI suffered bodily injury, finding that the surveillance footage appeared to depict Simpson pulling the CI's arms back and that the CI received medical treatment for the claimed injury.

With these objections resolved, the district court calculated a combined total offense level of 22. The court also found that Simpson, who was 25 at sentencing, had 15 criminal-history points, placing him into criminal-history category VI. This established an advisory guideline imprisonment range of 84 to 105 months. After incorporating a mandatory consecutive penalty of 84 months for brandishing a firearm during a crime of violence, *see* 18 U.S.C. § 924(c)(1)(A)(ii), Simpson's total guideline range was 168 to 189 months.

Referencing the 18 U.S.C. § 3553(a) factors, Simpson requested the minimum sentence possible: seven years and one day of incarceration. In support of that request, Simpson cited his young age, his lack of guidance growing up in a rough

5

environment, his attempts at reform, and the need to reflect that he was less culpable than Byrd. He acknowledged the criminal-history category of VI but argued that most of the offenses were limited to a discrete period several years earlier. The government responded to these points and asked for a sentence of 168 months, at the low end of the total guideline range.

The district court sentenced Simpson to 168 months of imprisonment, finding that the guideline range appropriately reflected the aggravating and mitigating circumstances of the case. The court explained that it considered Simpson's substantial criminal record, despite his young age, to be more of an aggravating factor than a mitigating one, and that the "almost random violence of the act" was an aggravating circumstance that weighed in favor of a sentence within the guideline range. Simpson now appeals.

## III.

In reviewing a sentence, we make sure that it is both free from significant procedural error and substantively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). Significant procedural errors include improperly calculating the guideline range and failing to consider the sentencing factors under 18 U.S.C. § 3553(a). *Id.* If the sentence is procedurally sound, we then consider whether it is

substantively reasonable under the totality of the circumstances, giving due deference to the district court's assessment of the § 3553(a) factors. *Id.*

## IV.

We first consider Simpson's challenge to the district court's application of the enhancements for "more than minimal planning," U.S.S.G. § 2A2.2(b)(1), and for "bodily injury," *id.* § 2A2.2(b)(3)(A). When considering the district court's resolution of guideline issues, we review legal issues *de novo*, factual findings for clear error, and the court's application of the sentencing guidelines to the facts with "due deference." 18 U.S.C. § 3742(e); *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010); *United States v. Williams*, 340 F.3d 1231, 1238–39 (11th Cir. 2003) (holding that the deference that is due depends on the nature of the question presented). The district court clearly errs when, after reviewing all of the evidence, we are left with a "definite and firm conviction" that a mistake has been made. *United States v. Foster*, 155 F.3d 1329, 1331 (11th Cir. 1998).

## A.

A two-level increase applies when an aggravated assault involves "more than minimal planning," U.S.S.G. § 2A2.2(b)(1), which means "more planning than is typical for commission of the offense in a simple form," U.S.S.G. § 2A2.2, cmt. n.2. The enhancement also applies "if significant affirmative steps were taken to conceal

7

the offense." *Id.* For example, "waiting to commit the offense when no witnesses were present" would not constitute more than minimal planning, but "luring the victim to a specific location or wearing a ski mask to prevent identification" would. *Id.* We review a finding of "more than minimal planning" for clear error. *United States v. Garcia*, 13 F.3d 1464, 1470 (11th Cir. 1994).

Simpson argues that this case is controlled by *United States v. Tapia*, 59 F.3d 1137 (11th Cir. 1995). In that case, Michael Connelly was assaulted by Joseph Perez and several others shortly after Connelly was transferred to a jail for the purpose of testifying against Billy Ryan in a federal drug case. *Id.* at 1139. The district court applied an enhancement for more than minimal planning because, just prior to the attack, Perez had called Ryan to ascertain that Connelly planned to testify against Ryan. *Id.* at 1144. We vacated the enhancement on appeal. *Id.* We stated that "Perez did not formulate a sophisticated plan or an elaborate scheme," noting that Perez did not take steps "to have Connelly placed in the cell with him" and that the phone call to Ryan "was made immediately prior to the attack." We also found no evidence of concealment. Accordingly, we concluded that the crime did not involve more planning than typical for the commission of the offense. *Id.*

Here, the district court did not clearly err in finding that Simpson engaged in more than minimal planning under U.S.S.G. § 2A2.2(b)(3). In contrast to *Tapia*,

8

where the defendant essentially took advantage of what he must have deemed a fortuitous opportunity, the record here supports the district court's finding that the robbery was planned in advance by Byrd and Simpson.

Specifically, the record indicates that Byrd and Simpson planned to lure the CI to Byrd's apartment for the purpose of robbing the CI of the gun-purchase money. Byrd stated in a post-arrest interview that he planned the robbery with Simpson, and their actions on the day of the robbery support that interpretation. Byrd notified Simpson when the CI was on the way, and they coordinated their activities by phone while the CI was at Byrd's apartment. Then, with Byrd's tip-off, Simpson lay in wait for the CI behind the apartment building so that he could approach the CI from behind and prevent identification. While this scheme was not particularly "sophisticated" or "elaborate," the evidence of planning, coordination, and concealment is enough to distinguish this case from *Tapia* and to show that the offense involved "more planning than is typical for commission of the offense in a simple form." U.S.S.G. § 2A2.2, cmt. n.2. We find no clear error in the district court's application of this enhancement.

**B.**

9

A three-level increase applies when the victim of an aggravated assault sustains "bodily injury," as that term is defined in U.S.S.G. § 1B1.1. U.S.S.G. § 2A2.2(b)(3)(A); *id.* § 2A2.2 cmt. n.1. Section 1B1.1 defines "bodily injury" as "any significant injury; *e.g.*, an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1, cmt. n.1(B). We review for clear error a district court's determination that a victim's injuries meet the threshold for a bodily-injury enhancement. *See United States v. Torrealba*, 339 F.3d 1238, 1242, 1246 (11th Cir. 2003) ("the district court did not clearly err in determining that [the victim's] injuries were 'permanent or life-threatening'").

Here, the district court did not clearly err in finding that the CI sustained "bodily injury" during the robbery.[1] *See* U.S.S.G. § 2A2.2(b)(3)(A). The court did not, as Simpson suggests, base its finding solely on the CI's complaints of chest and shoulder pain. Rather, the court relied on medical records from the emergency room, which showed that the CI underwent a physical examination and x-rays, that she was given Vicodin (a narcotic pain reliever) and Valium (a muscle relaxer), and that she

---

[1] Simpson argues, and the government concedes, that the surveillance video does not support the district court's finding that Simpson pulled the CI's arms back during the robbery. In other words, that finding was clearly erroneous. We agree with the government, however, that this finding is not necessary to sustain the enhancement because the medical records support the court's finding that the CI sustained a bodily injury. *See United States v. Chitwood*, 676 F.3d 971, 975 (11th Cir. 2012) (stating that we may affirm for any reason supported by the record).

was released with a shoulder immobilizer and a prescription for Valium and Ibuprofen.  Based on the extent of medical treatment, the court reasonably inferred that the CI suffered a shoulder injury "of a type for which medical attention ordinarily would be sought."  U.S.S.G. § 1B1.1, cmt. n.1(B); *see United States v. Aguilar-Ibarra*, 740 F.3d 587, 592–93 (11th Cir. 2014) (holding, on plain-error review, that the victim's injuries were "of a type for which medical attention ordinarily would be sought" where the victim was transported to the hospital for unspecified "minor injuries" following an assault by multiple masked men brandishing replica firearms).  Because the medical records support the district court's finding of a bodily injury, we find no clear error requiring reversal in the application of the bodily-injury enhancement under § 2A2.2(b)(3)(A).[2]

## V.

Finally, Simpson argues that his 168-month sentence of imprisonment is substantively unreasonable.  He contends that the sentence is too harsh, considering his upbringing and the fact that the offenses arose from the crime-ridden environment he had struggled to distance himself from.  He also says that his

---

[2] Simpson offers no support for his claims that the medical records were insufficient because he questioned the CI's credibility, that the government was required to call the CI as a witness, or that the government needed to call a medical professional to establish that the injury was "of a type for which medical attention ordinarily would be sought."

11

sentence is too similar to Byrd's and does not account for Simpson's lesser role in the offense, his young age, and his relatively less serious criminal record.

We review the reasonableness of a district court's choice of sentence for an abuse of discretion. *United States v. Irey*, 612 F.3d 1160, 1188 (11th Cir. 2010) (*en banc*). "The party challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015). Ordinarily, "we will reverse a sentence as substantively unreasonable only if we are left with the definite and firm conviction that the [d]istrict [c]ourt committed a clear error of judgment in weighing the factors by arriving at a sentence outside the range of reasonable sentences dictated by the facts of the case." *United States v. Alberts*, 859 F.3d 979, 985 (11th Cir. 2017) (quotation marks omitted).

Here, Simpson's 168-month sentence is substantively reasonable. After calculating the guideline range and hearing argument from the parties and allocution from Simpson, the district court explained that a sentence at the low end of the guideline range was appropriate in light of Simpson's substantial criminal history and the "almost random violence" of the robbery. We "ordinarily expect" such a within-guideline sentence to be reasonable. *See United States v. Croteau*, 819 F.3d

1293, 1309–10 (11th Cir. 2016) ("We do not presume that a sentence falling within the guidelines range is reasonable, but we ordinarily expect it to be so."). And the district court, when balancing the § 3553(a) factors, was entitled to weigh more heavily the seriousness of the offense conduct and Simpson's substantial criminal history. *See Rosales-Bruno*, 789 F.3d at 1256–57. While Simpson argues that the court should have weighed mitigating factors more heavily and maintained a sharper distinction between his sentence and Byrd's, these are matters within the district court's discretion, and Simpson has not shown that the court "committed a clear error of judgment in weighing the factors by arriving at a sentence outside the range of reasonable sentences dictated by the facts of the case." *See Alberts*, 859 F.3d at 985.

For these reasons, we affirm Simpson's sentence.

**AFFIRMED.**

13