UNITED STATES of America, Plaintiff–Appellant,

v.

Jackie D. LONG, Robert F. Money, Defendants–Appellees.

UNITED STATES of America, Plaintiff–Appellant,

v.

Keith A. GRIFFIN, Defendant–Appellee.

Nos. 89–3942, 89–4007.

United States Court of Appeals, Eleventh Circuit.

July 17, 1991.

James P. Turner, Acting Asst. Atty. Gen., Dennis J. Dimsey, Louise A. Lerner, Civil Rights Div., U.S. Dept. of Justice, Washington, D.C., for the U.S.

Joel C. Fanning, Pensacola, Fla., for Griffin.

Stephen E. Sutherland, Pensacola, Fla., for Long.

E. Brian Lang, Pensacola, Fla., for Money.

Before HATCHETT and
EDMONDSON, Circuit Judges, and
PECKHAM *, Senior District Judge.

EDMONDSON, Circuit Judge:

In this case we decide when and how the victim's race can be properly considered when applying the Sentencing Guidelines to persons convicted of interfering with the civil rights of others. We hold that the victim's race, in itself, cannot be used to increase automatically the level of punishment, but that the victim's race is a fact that can be considered together with the other specific circumstances to determine whether the victim was a "vulnerable victim" for sentence enhancement purposes under section 3A1.1 of the Guidelines. Because our view of the law differs from the district court, we VACATE defendants' sentences and REMAND for resentencing.

## I.

In 1989, the Smallses, a black family, moved into a rural, all-white area of northwest Florida. Within a few days of the family's arrival, defendants Keith A. Griffin, Jackie D. Long, and Robert F. Money, along with three others, constructed a cross and burned it on the family's front lawn during the night. All three defendants participated in the procurement of the necessary materials and in the construction and transportation of the cross.

In addition, defendants Griffin and Long were present when defendant Money fired four gunshots into a tree to bring the burning cross to the attention of the Smalls family.

At the time of the incident, Mr. Smalls had returned to Lubbock, Texas, where he was stationed in the Air Force. Mrs. Smalls and her teenage son witnessed the cross-burning, but Mrs. Smalls prevented her teenage daughter from seeing it. The nearest neighbors to the victims lived about a mile away, and their nearest relatives lived more than five miles away. Mrs. Smalls called the county sheriff, and deputies extinguished the fire before it caused property damage.

Defendants were indicted for violations of 18 U.S.C. § 241 (conspiracy to interfere with civil rights), 42 U.S.C. § 3631(a) (interference with housing rights), and 18 U.S.C. § 844(h)(1) (use of fire in the commission of a federal felony). Defendants pled guilty to the conspiracy count and stated in their plea agreement that they decided to burn the cross in the victims' yard "because of the family's race and their presence in the neighborhood," and "to intimidate and to interfere with the [family's] enjoyment and occupance of their home."

The government appeals the district court's rejection of a government request at sentencing that defendants' base offense levels [1] be enhanced two levels under the

---

* Honorable Robert F. Peckham, Senior Judge, U.S. District Court, Northern District of California, sitting by designation.

1. Under the plea agreement, the parties stipulated to a base offense level of 17 for each defendant. The offense level was calculated by combining the base offense level for conspiracy to violate civil rights with the offense levels for the criminal conduct underlying the conspiracy offense. *See* U.S.S.G., § 2H1.2(a) (base offense level for conspiracy to violate civil rights is the *greater of 13 or "2 plus the offense level applicable to any underlying offense"*).

The underlying conduct included use of force or threat of force to deny rights in furtherance of discrimination and use of fire in the commission of a felony. Section 2H1.3(a) provides that the base offense level for the use of force or threat of force to deny rights in furtherance of discrimination, where no injury has occurred, is the greater of 10 or 2 plus the offense level applicable to any underlying offense. Section 2K1.4(a) provides a base offense level of 6 for

arson and related crimes, and subsection 2K1.4(b)(4) enhances by seven levels if the defendant used fire in the commission of a federal felony.

Thus, the base offense level was computed as follows:

| | |
|---|---|
| 2H1.2(a) | 2 + |
| 2H1.3(a) | 2 + |
| 2K1.4(a) | 6 |
| 2K1.4(b)(4) | + 7 |
| | 17 |

The district judge rejected this base offense level, finding no facts upon which to apply the underlying arson-related guideline of section 2K1.4 or its seven-level enhancement for use of fire in a federal felony. The judge adopted from section 2H1.2(a) the alternative base offense level of 13 for the conspiracy count, reducing two levels for acceptance of responsibility. The government appeals this ruling as well.

vulnerable victim adjustment of section 3A1.1.

## II.

Section 3A1.1 provides for a two-level enhancement of a defendant's offense level when "an unusually vulnerable victim is made a target of criminal activity by the defendant." U.S.S.G. § 3A1.1, comment. (n.1). The "vulnerable victim" adjustment is satisfied in this case "[i]f the defendant knew or should have known that ... [the] victim was ... particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1.

On appeal, the government makes three alternative arguments about the applicability of section 3A1.1 to the facts of this case: (1) this circuit should adopt a rebuttable presumption that, as a matter of law, the sentence for a defendant guilty of cross-burning should be enhanced under section 3A1.1 where the victim is a black American; (2) the testimony of the victims at defendants' sentencing hearing demonstrated their vulnerability under section 3A1.1; or (3) the district court clearly erred in finding that the totality of the circumstances in this case did not meet the requirements of section 3A1.1.

### 1.

 We consider first the government's invitation to adopt a presumption that, as a matter of law, the vulnerable victim adjustment should be applied whenever the victim of a cross-burning is a black American.[2] For the reasons outlined below, we think such a presumption misapprehends the purpose behind section 3A1.1 and its proper application on a case-by-case basis.

 Despite its title, the "vulnerable victim" adjustment is not intended to enhance the applicable sentence for all those offenses in which the victim was unusually vulnerable. Instead, the "vulnerable victim" adjustment, like other sentencing factors, focuses chiefly on the conduct of the defendant. Section 3A1.1 is intended

to enhance the punishment for offenses where *the defendant selects the victim* due to the victim's perceived susceptibility to the offense. Toward this end, the Sentencing Commission has advised that the "vulnerable victim" adjustment "applies to offenses where an unusually vulnerable victim is made a target of criminal activity by the defendant." U.S.S.G. § 3A1.1, comment. (n.1).

By diverting attention away from the defendant's conduct and focusing it on the race of the victim, a presumption of vulnerability for the black victims of cross-burnings inadequately considers the defendant's motive in selecting the victims. It may not always be the case that a defendant chooses a black American to be the victim of a cross-burning because the defendant knew or should have known that the victim's race would make the victim particularly susceptible to the offense. Given two cross-burnings, one in the yard of a black family in a heavily populated, urban neighborhood where the majority of neighbors are black, and one in the yard of a family with some other racial status—for example, white civil rights workers in a rural area—we cannot say that the defendant guilty of the former offense, but not the latter, should be presumed to have chosen the victim because the defendant believed that the victim's race made the victim unusually vulnerable to cross-burning. And, although historically cross-burnings have almost certainly been most often directed at black people, nothing in the record before us shows that a white family similarly situated to the Smalls family would have been less terrified or that defendants knew or should have known that a white family would have been less terrorized.

Sweeping presumptions are not favored by section 3A1.1. Instead, the inquiry conducted by a sentencing judge to determine the applicability of section 3A1.1 is a mixed question of law and fact, and highly case-specific as a result. As Congress has noted, "a determination under section 3A1.1 of

---

**2.** Because this question turns on our interpretation of the Sentencing Guidelines, we review de novo the district court's conclusion that a vic-

tim's race is irrelevant. *See United States v. Goolsby*, 908 F.2d 861, 863 (11th Cir.1990).

the sentencing guidelines depends heavily on the unique factual pattern of the case, that determination cannot be considered simply a legal question." 100th Cong., 2d Sess., 151 Cong.Rec. 11,257 (1988). The Fifth Circuit has suggested that it believes the applicability of section 3A1.1 to be a *purely factual* determination. While we decline to adopt that conclusion, we agree with that court's observation that "a judgment as to vulnerability is not reducible to a calculation of the victim's age or to a diagnosis of the victim's disease." *United States v. Mejia–Orosco,* 868 F.2d 807, 809 (5th Cir.1989).

Moreover, it frankly worries us to have punishment for crimes turn directly on the race of the victim. In too many other contexts, this kind of thinking has led to a bad result. *See, e.g., McCleskey v. Kemp,* 481 U.S. 279, 291 n. 8, 107 S.Ct. 1756, 1766 n. 8, 95 L.Ed.2d 262 (1987) (defendant may challenge discriminatory imposition of death penalty based upon race of victim because "[i]t would violate the Equal Protection Clause for a State to base enforcement of its criminal laws on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'") (citations omitted); *id.* at 328–333, 107 S.Ct. at 1786–88 (Brennan, J., dissenting) (recounting history of discriminatory application of criminal law based upon race of victim); *Turner v. Murray,* 476 U.S. 28, 36–37, 106 S.Ct. 1683, 1688, 90 L.Ed.2d 27 (1986) (capital defendant accused of interracial crime is entitled to have prospective jurors informed of victim's race and questioned about racial bias); Higginbotham, *In the Matter of Color: Race and the American Legal Process* (1978) (surveying laws from colonial period that provided more severe punishment for black-on-white crimes).

### 2.

Neither can we accept the government's claim that the requirements of section 3A1.1 are satisfied solely by the testimony of the victims. In this case, Mr. and Mrs. Smalls testified at the sentencing hearing for defendants Long and Money[3] about the

shock and anger the cross-burning evoked and the fear they felt for their family's safety. Mrs. Smalls testified that their two teenaged children decided to join the military several months after the cross-burning, at least partially motivated by a desire to escape the racial bigotry that the cross-burning represented.

Again we stress, however, that the applicability of section 3A1.1 turns on the defendant's decision to target the victim. The section does not authorize sentence enhancement based upon the severity of the victim's suffering. A victim's testimony can be relevant to the sentencing court's determination of "vulnerability," but only to the extent that the victim discusses facts that might have been known to defendants and motivated the defendants in selecting the victim.

### 3.

Last, the government argues that the facts surrounding the offense in this case require the application of the vulnerable victim adjustment and that the district court's ruling to the contrary was clear error. We agree and reverse the district court's rejection of the two-level enhancement.

We review the factual findings underlying the district judge's decision for "clear error," but we review his application of the sentencing guidelines to those facts with only "due deference." *See* 18 U.S.C. § 3742(e); 100th Cong., 2d Sess., 151 Cong. Rec. 11,257 (1988) ("Making the subjective determination required by section 3A1.1, ... unlike resolving purely factual questions, is not uniquely within the district court's expertise. The clearly erroneous standard, therefore, would be inappropriate.").

Given that our inquiry is limited to those factors suggesting victim vulnerability about which "defendants knew or should have known," we reject the government's suggestion that Mr. Small's absence— which was unknown to defendants—at the time of the cross-burning is a relevant fact. For the same reason, we also consider it

---

**3.** Separate plea acceptance and sentencing hearings were held for defendant Griffin.

irrelevant that Mrs. Smalls grew up in a nearby area and had relatives who possibly could have come to her aid, a fact mentioned by the district judge.

■ The only facts known to defendants when they decided to target the Smalls family were (1) the race of the victims, (2) that the Smallses were the first black family to move into the area, (3) the rural, isolated location of their home, and (4) the time (middle of the night) that they chose to act.

■ The district judge explicitly rejected the third fact, concluding that the family's home was not particularly isolated for a rural dwelling and that the Smallses chose to move into a rural area because it was isolated and private. We reject as clearly erroneous the judge's finding that the family's home was not isolated; if the judge can compare its isolation to the average rural home, only the most remote mountain cabin would be considered isolated. The motive of the Smallses for moving to the area is also irrelevant; a purpose behind the civil rights statute violated here was to guarantee citizens a free choice in where to live.

■ The district judge did not mention directly the other three factors, but he implicitly rejected the government's argument that race was a relevant factor. We disagree with this approach. We think that when the race of the victim could reasonably give the appearance, in the light of other circumstances, of increased isolation on the part of the victim, so that a defendant could think that aid for the victim might be less available or slower in coming, race counts towards vulnerability. Here, defendants did know that the Smalls family was the first and only black family to move into the area. Therefore, we believe the victims' race must be considered in deciding if they were vulnerable.[4] This apparent isolation was heightened by the other factors: the victims' home was physically isolated and the cross was burned in the middle of the night.

These factors, considered in their totality, are sufficient to justify application of section 3A1.1 to defendants. We need express no opinion about which factors, if absent, would have precluded application of the vulnerable victim adjustment; such a determination is better left to case-by-case analysis.

### III.

We REVERSE the district court's refusal to enhance defendants' sentences for a vulnerable victim adjustment. In the light of *United States v. Worthy*, 915 F.2d 1514 (11th Cir.1990), we also REVERSE the district court's decision to reject the base offense level of section 2K1.4 and that section's enhancement for use of fire in a felony.[5] Accordingly, we VACATE defendants' sentences and REMAND for resentencing in accordance with this opinion.

---

**4.** Defendants argue that the race of the victim cannot be relevant as a "vulnerable victim" factor because race was incorporated into the calculation of the base offense level of the guideline for conspiracy to violate civil rights. We do not believe that 18 U.S.C. § 241 assumes that the victim of a civil rights conspiracy will be a member of a racial minority. *See United States v. Salyer*, 893 F.2d 113, 116 (6th Cir.1989) (citing examples of conspiracies to deny interstate travel and the right to procedural due process) (citations omitted).

**5.** *See supra* note 1.