United States Court of Appeals,

Eleventh Circuit.

No. 94-6525.

UNITED STATES of America, Plaintiff-Appellee,

v.

John Willie MALONE, Jr., Defendant-Appellant.

March 27, 1996.

Appeal from the United States District Court for the Southern District of Alabama. (No. CR 93-00242-RV), Richard W. Vollmer, Jr., Judge.

Before TJOFLAT, Chief Judge, DYER and GARTH[*], Senior Circuit Judges.

GARTH, Senior Circuit Judge:

Defendant John Willie Malone, Jr., who was one of two defendants, entered a conditional plea of guilty to each count of a three-count indictment, charging him with conspiracy to commit armed robbery of an automobile, the substantive crime of armed robbery of an automobile, and use of a firearm during a crime of violence. The district court sentenced Malone to a total of 97 months incarceration, joint and several restitution of $554.00, and a special assessment of $150. On appeal, Malone contests the district court's imposition of a two-level "vulnerable victim" enhancement to his sentence. *See* U.S.S.G. § 3A1.1.[1]

---

[*]Honorable Leonard I. Garth, Senior U.S. Circuit Judge for the Third Circuit, sitting by designation.

[1]Malone had also originally raised a Double Jeopardy challenge to multiple punishments under 18 U.S.C. § 2119 and 18 U.S.C. § 924(c). At oral argument, however, Malone conceded that this ground for appeal could not be sustained in light of the Eleventh Circuit's decisions in *United States v. Moore,* 43 F.3d 568, 574 (11th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct.2d 212, 133 L.Ed.2d 144 (1995); and *United States v.*

We have jurisdiction pursuant to 18 U.S.C. § 3742(b) and 28 U.S.C. § 1291.  We hold that on this record, the evidence discloses that Malone specifically targeted his carjacking victim based on the latter's professional and legal obligations as a cab driver dispatched to pick up a fare.  The dispatched cab driver in this case was thus a victim particularly susceptible to criminal conduct.  We therefore affirm the sentence imposed on Malone by the district court.

## I.

At or around noon of November 16, 1993, John Willie Malone, Jr. and Marvin Osbey called the Yellow Cab Company and asked for a cab to pick them up in the Hart Street area of Mobile, Alabama, a residential neighborhood populated by few people and which had no busy streets.  Philemon Canfield, a taxi driver, responded to the call.  Canfield testified that under a City of Mobile ordinance, he was required to respond to every call given by the dispatcher and to pick up every passenger, unless the passenger is "so drunk that [he or she] can't stand up" or is "very argumentative." (Transcript of Sentencing, May 9, 1993, at 54).  Malone seated himself in the front seat, and Osbey sat in the back seat.

Once in the cab, Osbey pulled out a .38 caliber revolver, held it against Canfield's neck, and cocked the hammer.  Malone ripped

---

*Martin,* 38 F.3d 534, 535 (11th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 2290, 132 L.Ed.2d 292 (1995).  *Moore* and *Martin* hold that the Double Jeopardy Clause does not bar the imposition of cumulative punishments under both 18 U.S.C. § 2119 and 18 U.S.C. § 924(c) because even though these two statutes fail the same elements test of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), Congress intended cumulative punishments under both statutes.

out the two radios in the cab to prevent Canfield from communicating with anyone. The defendants forced Canfield, at gunpoint, to drive around several blocks. While they were driving around, Malone searched Canfield and the cab and took all of Canfield's money. They finally stopped about three blocks away from the initial pick-up location. Malone then told Canfield to get out of the cab, and he and Osbey stole the cab.

On December 16, 1993, Malone was indicted for (1) conspiracy to commit armed robbery of an automobile in violation of 18 U.S.C. § 371, (2) armed robbery of an automobile in violation of 18 U.S.C. § 2119, and (3) use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c).

On February 9, 1994, Malone moved to dismiss Counts Two and Three, on the ground that they were each lesser included offenses of Count One and that to charge him with all three counts would subject him to multiple punishments for the same offense in violation of the Fifth Amendment Double Jeopardy Clause. The district court denied the motion by endorsement order of February 10, 1994.

On February 16, 1994, Malone entered a conditional plea of guilty to all counts, reserving his right to appeal the district court's denial of his motion to dismiss Counts Two and Three of the indictment.

By Order of April 22, 1994, the district court found, based on the Presentencing Investigation Report, that Canfield was an unusually vulnerable victim because the defendants had called for a cab, knowing that the cab driver would have to respond to the

call, intending to rob the cab driver.  (Order of April 22, 1994 at 2).

At the sentencing hearing, at which Canfield and both defendants testified, the district court stated:

> This Court finds that under the circumstances of this case, this individual was subject particularly to this type of criminal conduct when he drives a cab and is required to go into areas of danger where he is in an area or at least your client testified, there were very few people on the street in this area.

(Transcript of Sentencing Hearing, June 1, 1994, at 117-18).  The district court then upwardly adjusted Malone's offense level by two levels pursuant to U.S.S.G. § 3A1.1.  Malone objected to the "vulnerable victim" sentence enhancement.

By Judgment entered June 1, 1994, the district court sentenced Malone to 37 months for Counts 1 and 2 to run concurrently;  and 60 months for Count 3, to run consecutively, for a total of 97 months of incarceration.  The court also imposed joint and several restitution of $554.00 and a total special assessment of $150.

II.

A.

Malone argues that the district court erred in enhancing his sentence under U.S.S.G. § 3A1.1 on the ground that the victim in this case, being a cab driver, was particularly vulnerable to carjackings.  " "The district court's application of § 3A1.1 presents a mixed question of law and fact, which we review *de novo.*' " *United States v. Thomas,* 62 F.3d 1332, 1344 (11th Cir.1995) (quoting *United States v. Davis,* 967 F.2d 516, 523 (11th Cir.1992), *rehearing on other grounds,* 30 F.3d 108 (11th Cir.1994)).  We have recognized, however, that the district court's

determination of a victim's "vulnerability" is essentially a factual finding to which we should give due deference. *See United States v. Salemi,* 26 F.3d 1084, 1087 (11th Cir.1994) ("The determination of vulnerability is a factual finding which is entitled to due deference on review") (citation omitted), *cert. denied,* --- U.S. ----, 115 S.Ct. 612, 130 L.Ed.2d 521 (1994); 18 U.S.C. § 3742(e) ("The court of appeals ... shall give due deference to the district court's application of the guidelines to the facts.").[2] Further, the district court's findings of historical fact cannot be reversed unless clearly erroneous. *United States v. Davis,* 967 F.2d 516, 523 (11th Cir.1992), *rehearing on other grounds,* 30 F.3d 108 (11th Cir.1994).

B.

Section 3A1.1 of the Sentencing Guidelines provides for a two-level upward adjustment to the defendant's offense level:

> If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct.

U.S.S.G. § 3A1.1. "This adjustment applies to offenses where an unusually vulnerable victim is made a target of criminal activity

---

[2]The "due deference" standard in 18 U.S.C. § 3742 "serves as an additional caution against overly intense judicial review." *United States v. Mejia-Orosco,* 868 F.2d 807, 808 (5th Cir.1989), *cert. denied,* 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). The "purported purpose" of the "due deference" clause of § 3742 is " "to give the court of appeals flexibility in reviewing the application of a guideline standard that involves some subjectivity.' " *Id.* at 809 (citing Congressional Record at H11257 (1988)). As we stated in *United States v. Long,* 935 F.2d 1207 (11th Cir.1991), "[w]e review the factual findings underlying the district judge's decision for "clear error,' but we review his application of the sentencing guidelines to those facts with only "due deference.' " *Id.* at 1211.

by the defendant." (Application Note 1 to U.S.S.G. § 3A1.1). The commentary to section 3A1.1 provides that:

> The adjustment would apply, for example, in a fraud case where the defendant marketed an ineffective cancer cure or in a robbery where the defendant selected a handicapped victim. But it would not apply in a case where the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile. Similarly, for example, a bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank.

(Application Note 1 to U.S.S.G. § 3A1.1).

## C.

We have held that the applicability of a "vulnerable victim" sentence enhancement must be determined on a case-by-case basis, *United States v. Long,* 935 F.2d 1207, 1210 (11th Cir.1991), and it is appropriate only where the defendant targets the victim based on the latter's "unique characteristics" that make the victim more vulnerable or susceptible to the crime at issue than other potential victims of that crime. *United States v. Morrill,* 984 F.2d 1136, 1137 (11th Cir.1993) (en banc) ("*Morrill (II)*"); *Long,* 935 F.2d at 1210.

In such a case, the defendant is deemed more culpable than he otherwise would be had he committed that same crime on another victim who did not share those vulnerable characteristics. *Morrill (II),* 984 F.2d at 1137. *See United States v. Davis,* 967 F.2d 516, 524 (11th Cir.1992) (" "The vulnerability that triggers § 3A1.1 must be an "unusual' vulnerability which is present in only some victims of that type of crime. Otherwise, the defendant's choice of a likely victim does not show the extra measure of criminal depravity which § 3A1.1 intends to more severely punish.' ") (quoting *United States v. Moree,* 897 F.2d 1329, 1335 (5th

Cir.1990)), *rehearing on other grounds,* 30 F.3d 108 (11th Cir.1994). "[A] determination under section 3A1.1 of the sentencing guidelines depends heavily on the unique factual pattern of the case, that determination cannot be considered simply a legal question." 100th Cong., 2d Sess. 151 Cong.Rec. 11,257 (1988).

Thus we have been wary about concluding that any particular class of persons, including and especially "typical" victims of the crime at issue, are automatically "vulnerable victims" for purposes of § 3A.1. For instance, in *United States v. Tapia,* 59 F.3d 1137, 1143 (11th Cir.1995), where the defendants were convicted of a jail cell beating of an incarcerated government informant, we affirmed the "victim vulnerability" enhancement which the district court had imposed on the defendants' sentences. The district court had declined to hold that the victim there was a "vulnerable victim" based solely on the fact that he was a government informant, arguably a typical victim of a jail cell beating. Nonetheless, the district court concluded, and we agreed, that a "vulnerable victim" sentence enhancement was peculiarly appropriate in that case because the victim "as an individual, was particularly vulnerable by virtue of his incarceration with Appellants and his inability to escape, and that [the victim] was targeted because of this vulnerability." *Id.*

In *Long,* 935 F.2d 1207, we held that a black family was not, by their race alone, "automatically" "vulnerable victims" of cross-burning. *Id.* at 1209. Similarly, in *Morrill (II),* 984 F.2d 1136, we held that bank tellers as a class were not "automatically" "vulnerable victims" of bank robberies, by virtue of their

positions as bank tellers. *Id.* at 1138. In so holding, however, we cautioned:

> This is not to say that bank tellers in individual cases never may be particularly susceptible or otherwise vulnerable victims of a bank robbery. Enhancement is appropriate under section 3A1.1 when a particular teller-victim possesses unique characteristics which make him or her more vulnerable or susceptible to robbery than ordinary bank robbery victims and thus make the particular bank robber more culpable than the ordinary perpetrator.

*Id.* at 1138.[3] *See also United States v. Segien,* 986 F.2d 439, 440–41 (11th Cir.1993) (remanding case for resentencing of bank robber in light of *Morrill (II)* and instructing trial court to make a "fact-specific" determination of whether "vulnerable victim" enhancement applied). *But see United States v. Salemi,* 26 F.3d 1084, 1088 (11th Cir.1994) (holding that a six-month-old baby was a "vulnerable victim" to kidnapping within the meaning of § 3A1.1, even though the district court found that the defendant's mental and emotional condition clouded his ability to perceive the baby's peculiar vulnerability, and even though the baby was not harmed), *cert. denied,* --- U.S. ----, 115 S.Ct. 612, 130 L.Ed.2d 521 (1994).

Enhancing a defendant's sentence solely based on the victim's membership in an arguably "vulnerable" class does not comport with the purposes of § 3A1.1, because the "vulnerable victim" adjustment

---

[3]We had earlier held in *United States v. Morrill,* 963 F.2d 386 (11th Cir.1992) ("*Morrill (I)* "), that bank tellers as a class were "vulnerable victims" to bank robbery within the meaning of § 3A1.1. Thereafter, on remand from the Supreme Court, we held *en banc* that bank tellers were not, as a class, "vulnerable victims" under § 3A1.1.

> Subsequent to the sentencing of the defendant in *Morrill (II),* the commentary to § 3A1.1 was amended in 1992 to explicitly provide that "[A] bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank."

"focuses chiefly on the conduct of the defendant" and should be applied only where "*the defendant selects the victim*" due to the victim's perceived vulnerability to the offense. *Long,* 935 F.3d at 1210.

### III.

The particular facts of the present case lead us to conclude that the district court properly enhanced Malone's sentence under § 3A1.1. Malone testified that he and Osbey had called the cab company because they had wanted a cab driver to come to them, with the intent of robbing the cab driver. (Transcript of Sentencing Hearing, June 1, 1994, at 86). Malone testified that calling for a cab saved them from having to go out and find a victim. *Id.* As a cab driver, Canfield was obligated both by his functions as a cab driver and by a Mobile city ordinance to respond to a dispatcher's orders. In doing so on this occasion, Canfield was obliged to drive to the rather deserted neighborhood of Hart Street, and then admit two strangers (Malone and Osbey) to his cab. We need not, and do not, address here the question of whether all cab drivers, by virtue of their vocation, are to be classed as "vulnerable victims," for purposes of sentence enhancement under § 3A1.1, if they are carjacked. However, we are satisfied that a "vulnerable victim" enhancement is appropriate under the particular aspects of this case. Here, the defendants specifically targeted a driver such as Canfield, knowing that his obligations as a dispatched cab driver made him more vulnerable to carjackings than other drivers of cars.

We are persuaded that this case is distinguishable from

*Morrill (II),* in which this court held that bank tellers as a class are not *per se* "vulnerable victims" under 3A1.1.  We stated in *Morrill (II)* that because "[b]ank tellers are typical victims of bank robberies;  many, if not most bank robberies are perpetrated against bank tellers."  *Id.* at 1138.  Thus, in *Morrill (II),* we concluded that the Sentencing Guidelines, in setting the base offense level for bank robberies, had already taken into account the culpability of bank robbers *vis a vis* bank tellers.[4]

In contrast to bank robbers, who must inevitably victimize bank tellers to carry out their crime, carjackers can victimize any driver of a vehicle.  However, few drivers have an obligation to stop or even roll down their windows for a stranger, let alone allow strangers to enter their vehicles.  Dispatched cab drivers, in contrast, are obligated by the very nature of their calling to drive to unfamiliar and often dangerous pick-up locations, permit strangers into their cabs, and drive them to their destinations. In setting the base offense level for carjackers, the Sentencing Guidelines do not contemplate the added culpability of a defendant who chooses to target a dispatched cab driver rather than another driver.[5]

In a case such as the present one, where carjackers have

_____

[4]Section 2B3.1 of the Sentencing Guidelines provides a base offense level of 30 for robbery, § 2B3.1(a), and an additional 2 level increase if "the property of a financial institution ... was taken, or if the taking of such property was an object of the offense."  U.S.S.G. § 2B3.1(b)(1)(A).

[5]Section 2B3.1 of the Sentencing Guidelines provides a base offense level of 30 for robbery, § 2B3.1(a), and an additional 2 level increase if "the offense involved carjacking."  U.S.S.G. § 2B3.1(b)(1)(B).

specifically targeted a dispatched cab driver, knowing that the cab driver had the unique obligation to drive to a pick-up point of the carjackers' choice and then to let them into his cab, the cabdriver was especially vulnerable to robbery and to carjacking. A carjacker, in so targeting his victim, is more culpable than other carjackers and warrants a sentence enhancement under U.S.S.G. § 3A1.1.

IV.

For the foregoing reasons, we will affirm the sentence of the district court.

DYER, Senior Circuit Judge, dissenting:

The majority holds "that a "vulnerable victim' enhancement is appropriate under the particular aspects of this case," reasoning that "[h]ere, the defendants specifically targeted a driver such as Canfield, knowing that his obligations as a dispatched cab driver made him more vulnerable to carjackings than other drivers of cars." The majority relies upon Malone's testimony that he and Osbey "called the cab company because they had wanted a cab driver to come to them, with the intent of robbing the cab driver," and "that calling a cab saved them from having to go out and find a victim." In my view, this is not evidence that the defendants targeted Canfield as their victim.

Section 3A1.1 of the Sentencing Guidelines provides for enhancement of the offense level "[i]f the defendant *knew or should have known* ... that a victim was ... particularly susceptible to the criminal conduct. U.S.S.G. § 3A1.1 (emphasis added). In determining whether to enhance a sentence for a "vulnerable

victim," the focus is on the defendant's conduct. *U.S. v. Long,* 935 F.2d 1207, 1210 (11th Cir.1991). No evidence in the record suggests the defendants knew or should have known that if they called for a cab, the dispatched driver was obligated by city ordinance to respond to the call. It is unreasonable to infer from Malone's testimony that the decision to rob a dispatched cab driver was motivated by the defendants' knowledge of the ordinance. Such knowledge would be necessary, in my opinion, to prove that the defendants targeted a dispatched cab driver because he was particularly susceptible to carjacking. *See id.* ("Section 3A1.1 is intended to enhance the punishment for offenses where *the defendant selects the victim* due to the victim's perceived susceptibility to the offense.") (emphasis in original). At most, Malone's testimony shows the defendants called for a cab out of convenience, not due to any belief that the driver of a dispatched cab made an easier target for carjacking than any other driver.

The majority has created a *per se* class of vulnerable victims under § 3A1.1 consisting of all dispatched cab drivers who have a legal duty to pick up a fare. Creation of this class results in sentence enhancement for all defendants who select these individuals as their victim, thus precluding application of § 3A1.1 on a case-by-case basis. *Id.* Just as bank tellers are not automatically vulnerable victims by virtue of their positions as bank tellers, *United States v. Morrill,* 984 F.2d 1136, 1138 (11th Cir.1993) (en banc), dispatched cab drivers should not automatically be vulnerable victims by virtue of their professional or legal obligation to pick up a fare. This is not to say that

dispatched cab drivers can never be particularly susceptible to or otherwise vulnerable victims of carjacking. For example, where a defendant selects a dispatched cab driver because he knows the driver cannot refuse the fare, or where a defendant requests a specific driver because of unique characteristics that make him or her more vulnerable to carjacking than the ordinary dispatched cab driver, and thus make the defendant more culpable than the ordinary carjacker, enhancement would be appropriate. *See id.*

In short, I see nothing in these circumstances indicating that the dispatched cab driver was an "unusually vulnerable victim." *See* U.S.S.G. § 3A1.1, comment. (n. 1). I would therefore reverse the two-level enhancement under § 3A1.1.