UNITED STATES of America, Plaintiff-Appellee,

v.

Francisco GONZALEZ, Rodrigo Buitrago, David Santiago, Carmello Claudio, Juan Jose Diaz, Defendants-Appellants.

No. 96-5303.

United States Court of Appeals,

Eleventh Circuit.

Aug. 13, 1999.

Appeal from the United States District Court for the Southern District of Florida. (No. 96-67-CR-KMM), k. Michael Moore, Judge.

Before TJOFLAT and DUBINA, Circuit Judges, and SMITH[*], Senior Circuit Judge.

DUBINA, Circuit Judge:

Appellants Rodrigo Buitrago ("Buitrago"), Juan Jose Diaz ("Diaz"), Francisco Gonzalez ("Gonzalez"), David Santiago ("Santiago"), and Carmello Claudio ("Claudio"), appeal their convictions and sentences for several offenses relating to a cocaine conspiracy. Buitrago and Diaz were convicted of Count I, charging conspiracy to import cocaine, in violation of 21 U.S.C. § 963. All defendants were convicted of Count II, charging them with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and Count III, charging them with using or carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

We affirm Buitrago and Gonzalez's convictions and sentences. We reverse Santiago and Claudio's convictions and vacate the attendant sentences on Count III because the district court violated *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), when it allowed a witness to relate an out-of-court statement made by Gonzalez that implicated Santiago and Claudio. We also reverse Santiago's and Claudio's convictions on Count II and Diaz's conviction and sentence on Count III due to insufficient evidence. We affirm Diaz's remaining convictions but vacate his sentence and remand for resentencing due

---

[*]Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

to the government's failure to abide by the strict requirements of 21 U.S.C. § 851. Finally, we vacate the district court's imposition of fines and its orders that mandate, as a condition of supervised release, that the defendants be deported. *See United States v. Romeo,* 122 F.3d 941 (11th Cir.1997).

FACTS

In October 1995, Nancy Camacho ("Camacho"), a confidential informant, notified Drug Enforcement Administration ("DEA") Agent Alfonso Savory ("Agent Savory") that Buitrago wanted to locate an individual to travel to Costa Rica to pick up cocaine and deliver the cocaine to the United States for distribution. While Agent Savory observed, Camacho met with Buitrago and agreed to go to Costa Rica and retrieve the cocaine. Camacho told Buitrago that a friend would accompany her to Costa Rica if she needed an additional person to retrieve the cocaine. Buitrago indicated that he needed two people. Buitrago agreed to pay Camacho $15,000.00 per kilogram of cocaine that she smuggled into the United States. Buitrago added that Camacho's travel and subsistence expenses would be paid in advance. Several days later, Camacho spoke telephonically with Buitrago. The DEA recorded the conversation, which was in Spanish. In the conversation, Buitrago stated that the people in Columbia had to approve Camacho's employment. Once Buitrago received approval, he asked Diaz, one of the coconspirators, to wire $1,800.00 to Camacho via Western Union for her travel expenses.

On October 24, 1995, Camacho, her friend "Mona," and Surfside Police Officer/DEA Agent Robert De La Torre ("Agent De La Torre"), traveled to Costa Rica. A Costa Rican named Armando Rojas gave Camacho two suitcases containing a total of approximately 10 kilograms of cocaine. Camacho gave the suitcases to DEA agents who returned to the United States with the cocaine. After Camacho returned to the United States, she discussed with Buitrago the manner of delivery of the cocaine. In this recorded conversation, Buitrago asked Camacho to deliver the cocaine to him at a Wal-Mart parking lot in Miami, Florida.

2

On November 8, 1995, the DEA established surveillance at the Wal-Mart. DEA agents observed Buitrago and Camacho discuss the transaction. Camacho tape-recorded the conversation. Buitrago gave Camacho the keys to his car and instructed her to take his car to get the cocaine, place the cocaine in the trunk of his car, drive his car back to the Wal-Mart parking lot, and leave it parked there with the keys under the driver's seat. Buitrago also informed Camacho that she would find her courier fee in cash in a box in the trunk of his car.

Camacho followed Buitrago's instructions. While a DEA agent helped Camacho load the two suitcases of cocaine into Buitrago's car, Camacho found the box containing the money and gave the box to the DEA agent. Camacho then drove Buitrago's car to the Wal-Mart parking lot and drove away in her own car. Camacho testified that before she left the parking lot, she saw Diaz. After Camacho left, Buitrago looked inside his car and approached the trunk. He then quickly walked away from the car and disappeared. Shortly thereafter, Diaz approached Buitrago's car and looked inside. Diaz repeatedly looked in the car but never entered it.

DEA agents waited almost three hours for someone to retrieve Buitrago's car but no one did. Since the DEA agents did not want to leave the car with drugs in it, they staged a theft of Buitrago's vehicle. During the staged theft of the vehicle, DEA agents observed Diaz running behind the vehicle in an attempt to thwart the theft. Afterward, the DEA agents removed the two suitcases containing cocaine and placed them in DEA custody.

Later that same evening, a man named Diuza, who had originally put Camacho in touch with Buitrago, called Camacho from Cali, Colombia. Diuza said that Buitrago telephoned him and told him that he [Buitrago] was afraid to get into the car containing the suitcases but had a friend guard the car. Buitrago also informed Diuza of the theft of the vehicle. Diuza asked Camacho to assist Buitrago recover the stolen vehicle, but she declined. Camacho and Agent Savory, acting undercover, did meet with a man named Juan Carlos ("Carlos") from Cali, Colombia. Carlos told Camacho and Agent Savory that the people in Cali sent

3

him, and he questioned Camacho in detail in an effort to recover the lost cocaine. During this meeting, Agent Savory observed Diaz looking inside Camacho's car and inside the DEA surveillance van.

In December, three men invaded Camacho's house. Camacho, her 15 and 11 year old sons, and her aunt were present during the invasion. Camacho testified that Gonzalez tried to grab her, but she ran to an empty bedroom and telephoned the police. Another man grabbed Camacho's aunt and youngest son and threatened them. Camacho's 15 year old son ran into another bedroom and telephoned the police. Several minutes later, one of the men mentioned that the police were coming, so they all left.

The police arrived at the scene and Camacho, her aunt, and sons told them about the men and their getaway vehicle. The police issued a "Be on the Lookout" describing the men and their vehicle. A Metro Dade County police officer saw a car matching the description and saw several items being thrown from the vehicle. The officer stopped the vehicle and then recovered the items which were thrown from the vehicle: a loaded .38 caliber revolver, three sets of handcuffs, and a stun gun. The police then arrested the occupants of the vehicle, who were later identified as Gonzalez, Santiago, and Claudio.

## ISSUES

1. Whether the defendants's convictions must be reversed because of a *Bruton* violation.

2. Whether the police violated Gonzalez's Sixth Amendment right when they questioned him without his attorney present.

3. Whether the evidence was sufficient to sustain the convictions of Santiago and Claudio on Count II, and whether the evidence was sufficient to support the convictions of Buitrago and Diaz on Count III.

4. Whether the district court properly denied the following at trial: (a) objections to the case agent's testimony concerning the initiation of the investigation; (b) objections to the case agent's testimony that the informant was reliable; (c) Buitrago's request for an evidentiary hearing on counsel's competency; (d) Diaz's

4

objection to the introduction of his prior firearms conviction;  and (e) Claudio's objection to the testimony of his common law wife over her invocation of marital privilege.[1]

5. Whether the district court properly enhanced the defendants' sentences for the use of a dangerous weapon in the commission of a drug offense, the presence of vulnerable victims, and the physical restraint of those victims.

6. Whether the district court properly denied Diaz's motion to strike the government's notice of intention to seek an enhanced sentence pursuant to 21 U.S.C. § 851.

7. Whether the district court properly enhanced Buitrago's sentence based upon his supervisory role in an offense involving five or more persons.

8. Whether the district court properly denied Claudio a mitigation of sentence based upon his allegedly minor role.[2]

9. Whether the district court erred in admitting at trial, pursuant to Federal Rule of Evidence 404(b), evidence of Gonzalez's prior conviction for possession of a weapon.

DISCUSSION

A.    *Bruton*

Santiago, Claudio and Buitrago contend that the district court violated *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), when it allowed into evidence the non-testifying codefendants' confessions implicating them in the drug importation conspiracy and home invasion.  *Bruton* involved two defendants accused of participating in the same crime and tried jointly before the same jury. One defendant confessed, naming and incriminating the other defendant.  The trial court admitted the confession into evidence with a limiting instruction for the jury.  The Supreme Court held that despite the limiting instruction, the Constitution forbids the use of such a confession in a joint trial.

---

[1]Due to our disposition of the case, we find it unnecessary to address the district court's rulings as to these specific challenges.

[2]Because we reverse Claudio's convictions, we do not address this sentencing issue.

5

The Supreme Court recently addressed a *Bruton* violation in *Gray v. Maryland,* 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998). In *Gray,* the confessing defendant, Bell, made a statement to police in which he said that he and two other men, Gray, and a third man (who died before indictments were returned), had beaten to death the murder victim. 118 S.Ct. at 1153. The prosecution introduced Bell's confession in the joint trial of Bell and Gray, and Bell did not take the stand. The prosecution redacted the confession by using blanks or the word "deleted" to replace every mention of Gray or the third participant. However, after the detective read the redacted confession to the jury, the prosecutor asked whether the detective arrested Gray after Bell had confessed. The detective answered yes. The court instructed the jury that it should only consider the confession as evidence against Bell, not Gray.

The Court held that a *Bruton* violation still exists where a non-testifying defendant's confession is redacted by replacing a name with an obvious blank space, or symbol, or word such as "deleted." *See id.* 118 S.Ct. at 1156. In such a situation, the limiting instruction to consider the testimony as evidence against only the confessing defendant will be difficult for the jury to obey because it serves to emphasize the tendency of the confession to incriminate the non-confessing defendant. *See id.* at 1155. Additionally, the "accusation that the redacted confession makes 'is more vivid than inferential incrimination, and hence more difficult to thrust out of mind.' " *Id.* at 1157 (quoting *Richardson v. Marsh,* 481 U.S. 200, 208, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)). Accordingly, the Court held that confessions which substitute blanks or the word "delete" for the codefendant's proper name, fall within the class of statements to which *Bruton* applies. *See id.*

After his arrest, Gonzalez made a statement to law enforcement officials, who taped it. DEA Agent Vereault introduced Gonzalez's confession at trial. The prosecutor and Agent Vereault read the transcript to the jury as a dialogue, with the prosecutor reading the questions posed to Gonzalez by the interviewing law enforcement officials and Agent Vereault reading Gonzalez's statements. Gonzalez's confession, as redacted, states that there were four people involved in the "home invasion," including Gonzalez himself and a

6

Colombian who was waiting out of sight about a block away. Agent Vereault's recitation included certain information identifying Gonzalez's coconspirators. For instance, the jury heard that the man who asked Gonzalez to go to Camacho's house to intimidate her because she had failed to deliver ten kilograms of cocaine from him was a Colombian, a little taller than Gonzalez, in his 30's or 40's, with a full head of hair. R. Vol. 7, p. 163. The confession indicated that this Colombian went with Gonzalez in the car to Camacho's house. From other evidence, including Buitrago's own confession, it became obvious at trial that the Colombian was Buitrago.

As redacted, the confession was not initially clear whether anyone other than Gonzalez and the Colombian were involved in the assault on Camacho's family. Then, the prosecutor, reading from the transcript, said: "The Colombian was there at the house. He was the fourth person?" R. Vol. 7, p. 171. This is dangerously close to a confession that reads "Me, deleted, deleted, and the Colombian," which would obviously violate *Gray*. As in *Gray,* the jury in this case could readily infer that the two others referred to in the confession were seated at the defense table; specifically, Santiago and Claudio. The rationale underlying the Supreme Court's decision in *Gray* requires finding a *Bruton* violation on facts such as these, where a redacted confession implicates a precise number of the confessor's codefendants.

Relying on his own investigative report, Agent Vereault also recounted to the jury Buitrago's confession. This confession implicated his codefendants in several ways. Buitrago told Agent Vereault that he asked a friend to wire Camacho her traveling expenses because Buitrago lacked the proper identification. Buitrago did not state or imply that he told his friend the purpose for wiring the money. Buitrago's confession indicates that he was working for several men in Colombia. When Buitrago failed to receive delivery of the cocaine, the Columbians told him that he would have to work off his debt to them unless he recovered either the drugs or drug proceeds from Camacho. Agent Vereault testified that Buitrago "contacted a couple of people that had been introduced to him, and he discussed this proposed ripoff from [Camacho] with these people." R. Vol. 7, p. 182. Agent Vereault then testified that Buitrago had told him that he never provided

7

weapons to "any of the people" who went to Camacho's house. *Id.* Although Agent Vereault had initially redacted his notes to eliminate references to other defendants' involvement, on the stand, Agent Vereault subtly changed some of the pronouns and phrasing, thus implying to the jury that the defendants who participated in the home invasion knew that the overarching purpose behind the crime was to recover drug proceeds.

*Bruton* violations are subject to a harmless error review.

> The mere finding of a violation of the *Bruton* rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.

*Schneble v. Florida,* 405 U.S. 427, 430, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). We therefore consider each defendant's claim of a *Bruton* violation in light of the harmless error standard.[3]

Although leaving a physical description of Buitrago in Gonzalez's confession was a blatant *Bruton* violation, *see Gray,* 118 S.Ct. at 1156 ("[t]his Court has assumed, however, that ... specific descriptions fall inside, not outside, *Bruton* 's protection."), the error was harmless. Buitrago's confession and other evidence produced at trial indicated Buitrago's full participation in the drug conspiracy. Accordingly, we affirm his convictions.

For Claudio and Santiago, though, the only evidence linking them to the home invasion was their codefendants' confessions, so the admission of Gonzalez's confession was not harmless error. This confession violated Claudio's and Santiago's right of confrontation and they are entitled to new trials.

B.      Sixth Amendment

---

[3]The government argues that some of the defendants did not preserve the *Bruton* error for appellate review. The record reveals, however, that Santiago made a motion for a separate trial, based on *Bruton,* because of Claudio and Gonzalez's statements. R. Vol. 2, p. 77; R. Vol. 4, pgs. 3-17. Santiago also objected to the admission of Gonzalez's confession shortly after Agent Vereault began to recount it to the jury. R. Vol. 7, p. 163. Buitrago and Claudio joined in that objection. Accordingly, the defendants preserved the *Bruton* issue for appeal.

Gonzalez appeals the district court's denial of his motion to suppress the confession he gave to the police. He alleges that the police unlawfully interrogated him after he invoked his right to counsel. Specifically, Gonzalez claims that he did not personally initiate any contact with the police following his invocation of his right to counsel and the subsequent questioning by police violated his Sixth Amendment right.

The day after the police arrested Gonzalez on charges arising out of the invasion of Camacho's home, he appeared in state court and the court appointed a state public defender to represent him. The public defender filed a "Notice of Defendant's Invocation of the Right to Counsel" in state court and provided a copy to the state attorney. On January 10, 1996, Agent Savory and the lead state detective in the pending state case interrogated Gonzalez at the county jail, without the public defender present. Agent Savory testified that he interviewed Gonzalez because Gonzalez's wife told him in an interview that Gonzalez wanted to speak with him immediately. R. Vol. 4, p. 21. This interrogation resulted in a 13-page confession which prosecutors introduced into evidence at the trial.

Gonzalez moved to suppress the confession on the grounds that he had not initiated contact with the police after invoking his right to counsel. The district court conducted a hearing on the motion and found that Gonzalez had initiated contact with the police through his wife. The district court also noted that after Agent Savory arrived at the jail, he read Gonzalez his rights and Gonzalez agreed to speak with Agent Savory. The district court concluded that Gonzalez waived his rights by voluntarily answering Agent Savory's questions, and therefore, the resulting confession was properly admissible.

In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held that an accused person in custody who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484-85, 101 S.Ct. 1880. Thus, only a defendant, not the police, can reinitiate questioning once

9

the defendant has asserted his Sixth Amendment right to counsel. We find no police initiation under the facts of this case. The district court did not err in finding that, under these circumstances, Gonzalez reinitiated the questioning—albeit through his agent, his wife.

We find persuasive our decision in *United States v. Gaddy,* 894 F.2d 1307 (11th Cir.1990). In *Gaddy,* the police approached the defendant's aunt, who worked in the police department, and told her that it would be in the defendant's best interest for him to talk to the police. The aunt communicated this to the defendant and he agreed to speak with the police. Later that same day, the defendant provided a detailed statement to the police after being advised of his *Miranda* rights and signing a waiver form. This court, relying on *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, found that the defendant's Fifth and Sixth Amendment rights were not violated because the police did not initiate any further interrogation with the defendant. The defendant initiated the discussion—albeit through his agent, his aunt. Therefore, the policy behind *Edwards*—that police cannot reinitiate questioning after the defendant has invoked his right to counsel—remained intact.

Similarly, in this case, Gonzalez's wife indicated to the police that Gonzalez wished to talk to them. The police did not initiate any further discussion with Gonzalez. The police respected Gonzalez's right to counsel and only went to talk to him after his wife told them that he wanted to talk to them. After they arrived, the police read Gonzalez his rights and he voluntarily waived those rights by agreeing to talk with the police. As in *Gaddy,* there is no Sixth Amendment violation. Therefore, the district court did not err in denying Gonzalez's motion to suppress.

C.      Sufficiency of the Evidence[4]

Santiago and Claudio challenge the sufficiency of the evidence to convict them on Count II, the conspiracy to possess with intent to distribute cocaine count. We review *de novo* sufficiency of the evidence questions. *See United States v. Delgado,* 56 F.3d 1357, 1363 (11th Cir.1995). The evidence linking Santiago

---

[4]Buitrago challenges the sufficiency of the evidence to support his convictions. A review of the record convinces us that there is no merit to his challenge.

and Claudio to drug activity is highly circumstantial and inferential. The most damaging evidence is the testimony of Camacho's aunt. She reported that a man holding a gun said, "Tell her [Camacho] to pay the money that she stole." The prosecutor asked, "Stole from whom?" She responds, "To some people from Cali." (R. Vol.7, p. 122). It is not clear from this testimony whether the aunt inferred that the money was stolen from some people from Cali or whether the man with the gun said that the money was owed to people in Cali. This evidence is not sufficient to link Santiago or Claudio to the conspiracy to possess with intent to distribute cocaine.

Santiago testified at the trial and denied any knowledge that the purpose of the home invasion was to recover drugs or drug proceeds. The government argues that the jury disbelieved Santiago's testimony and this is sufficient to support his conviction. However, we have held that a defendant's testimony denying guilt can establish sufficient evidence of his guilt only if other corroborative evidence of guilt exists for the charged offense. *See United States v. Brown,* 53 F.3d 312, 314-15 (11th Cir.1995). The record discloses no other corroborative evidence of guilt, so we reverse Santiago's conviction on Count II.

The evidence is also insufficient to support Claudio's conviction on Count II. No witness identified Claudio as a participant in the home invasion and no witness mentioned Claudio as a participant in the conspiracy to possess cocaine. We therefore reverse his conviction on Count II.

There is sufficient evidence to support Diaz's convictions on Counts I and II; however, the evidence is insufficient to support his conviction on Count III. There is no evidence in the record linking Diaz to the planning or the participation in the home invasion. The government argued at trial that Diaz aided and abetted his codefendants in the use and possession of the firearms used in the home invasion. To prove that Diaz aided and abetted his codefendants, the government must demonstrate that a codefendant committed a substantive offense, that Diaz associated himself with the criminal venture, and that he committed some act that furthered the crime. *See United States v. Hamblin,* 911 F.2d 551, 557 (11th Cir.1990). Because the

government failed to meet its burden, the district court erred in denying Diaz's motion for judgment of acquittal on Count III.

D.      Buitrago and Gonzalez's Sentencing Challenges

Buitrago challenges his sentence on several grounds.  First, he contends that the district court erred in enhancing his sentence pursuant to U.S.S.G. § 3B1.1(a), which provides a four-level enhancement if the defendant was an organizer or leader of a criminal activity that involved five or more participants.  A review of the record demonstrates that there was more than sufficient evidence of Buitrago's involvement and participation in the drug conspiracy and the home invasion.  In addition to Buitrago's confession, Camacho testified that Buitrago was the one who contacted her about the drug importation and distribution scheme. The government introduced into evidence transcribed recordings of Buitrago and Camacho's conversations concerning the illegal activity.  In light of this overwhelming testimony, we conclude that the district court did not clearly err in enhancing Buitrago's sentence by four levels.

Buitrago and Gonzalez argue that the district court erred in enhancing their sentence by two levels pursuant to U.S.S.G. § 2D1.1(b)(1), which provides for such enhancement if a defendant possessed a dangerous weapon during the drug offense.  They rely on *United States v. Henderson,* 75 F.3d 614 (11th Cir.1996), to support their argument that an adjustment under this provision is inappropriate when a defendant has been convicted of 18 U.S.C. § 924(c).  Their reliance on *Henderson* is misplaced.  We did state in *Henderson* that a defendant's sentence could not be enhanced under section 2D1.1(b)(1) if the defendant was convicted under 18 U.S.C. § 924(c).  We further noted that the "sentence for firearm use under 18 U.S.C. § 924(c) is not dependent on the number of firearms used."  75 F.3d at 618.  However, unlike the defendants' situation here, Henderson had no coconspirators.  This distinction is significant.

In *United States v. Rodriguez,* 65 F.3d 932 (11th Cir.1995), the defendant was convicted of cocaine conspiracy and possession of a firearm in connection with the drug conspiracy.  The sentencing judge enhanced the defendant's sentence under U.S.S.G. § 2D1.1(b)(1), and we affirmed.  We stated that:

12

[t]his provision [U.S.S.G. § 2K2.4] applies to forbid enhancements for the *defendant's* possession of the weapon, since punishment for possession of that weapon has been meted out in the 924(c) sentence.... We do not read the note to suggest that enhancement for a *separate* weapons possession, such as that of a coconspirator, is prohibited.

65 F.3d at 933 (citations omitted) (emphasis in original); *accord United States v. Martinez,* 83 F.3d 371, 377 n. 8 (11th Cir.1996). *Rodriguez* controls this case.

Accordingly, we conclude that the district court did not err in enhancing Buitrago and Gonzalez's sentences under section 2D1.1(b)(1).

Buitrago and Gonzalez challenge the district court's enhancement of their sentence pursuant to U.S.S.G. § 3A1.1(b), which provides:

If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.

The district court's determination of a victim's "vulnerability" is essentially a factual finding to which this court gives due deference. *See United States v. Page,* 69 F.3d 482, 488 (11th Cir.1995).

We have "clearly recognized that the 'vulnerable victim' adjustment 'focuses chiefly on the conduct of the defendant' and should be applied only where '*the defendant selects the victim* ' due to the victim's perceived vulnerability to the offense." *Page,* 69 F.3d at 488 (quoting *United States v. Long,* 935 F.2d 1207, 1210 (11th Cir.1991) (emphasis in original)). The applicability of a vulnerable-victim enhancement must be determined on a case-by-case basis, and is appropriate where the defendant knows the victim has "unique characteristics" that make the victim more vulnerable to the crime than other potential victims of the crime. *See United States v. Malone,* 78 F.3d 518, 521 (11th Cir.1996).

Our § 3A1.1 cases require that a defendant "target" his victim. The Sentencing Commission, however, has recently amended the commentary to § 3A1.1 to clarify that the enhancement can apply even if a defendant did not "target" his victim. The amended note states: "Subsection (b) applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's

unusual vulnerability."  *See* U.S.S.G. § 3A1.1, comment. (n.2) (1998);  *Rodriguez,* 65 F.3d at 933 n. 1 (commentary binding on court).

Buitrago and Gonzalez's argument that this enhancement is improper in a drug-conspiracy case is meritless.  Although we typically apply the enhancement to cases involving fraud, obstruction of justice, or money laundering, we have also applied the enhancement in the context of a violent offense.  *See Malone,* 78 F.3d 518 (11th Cir.1996) (armed robbery;  carjacking).  Buitrago and Gonzalez also contend that the district court erroneously found that the aunt and the son were vulnerable simply because of their ages. Arguably, a victim's elderly or youthful status, without more, is insufficient as a matter of law to justify a vulnerable victim enhancement.  The district court must look not only at the victim's individual vulnerability, but also at the totality of the circumstances, including the status of the victim and the nature of the crime.  *See United States v. Tissnolthtos,* 115 F.3d 759, 762 (10th Cir.1997).  The district court complied with *Tissnolthtos* in the present case.

The evidence showed that the goal of the home invasion was to confront Camacho about the whereabouts of the missing drugs and the money the defendants paid her.  The conspirators initially targeted Camacho;  however, upon arriving at her home, they threatened and intimidated the other victims, Comacho's 72 year old aunt and her 11 year old son.  Those two people had "unique vulnerabilities" due to their relationship with Camacho and were easy targets because of their presence in the house.  The district court found that the aunt and son were vulnerable victims because the defendants pointed a gun to the son's head and threatened his life as well as the aunt's, in an effort to obtain information, drugs, or money from Camacho. *See United States v. Tapia,* 59 F.3d 1137, 1143 (11th Cir.1995) (individual was vulnerable victim because of his inability to escape from defendants).  Thus, their argument that they did not know that other people would be in Camacho's house is irrelevant, because once the defendants entered the house, they selected their victims in furtherance of their conspiracy.  Accordingly, we affirm the district court's enhancement of Buitrago and Gonzalez's sentences pursuant to U.S.S.G. § 3A1.1.

14

Buitrago and Gonzalez also challenge the district court's enhancement of their sentences pursuant to U.S.S.G. § 3A1.3, which provides that "[i]f a victim was physically restrained in the course of the offense, increase by 2 levels." They argue that the district court improperly applied this enhancement because they did not physically restrain anyone and it was not foreseeable that any codefendants would physically restrain a victim. The government responds that the facts do not support such a contention. The government claims that the goal of the home invasion—to retrieve money or drugs from Camacho—alerted them to the possibility that violence might be involved.

"Physical restraint" means the "forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1, comment. (n.1(i)). The use of the modifier "such as" indicates that the illustrations of physical restraint are listed by way of example rather than limitation. *See United States v. Jones,* 32 F.3d 1512, 1518 (11th Cir.1994). The record demonstrates that the defendant physically restrained the victims by forcibly holding them at gunpoint. The district court found that Buitrago and Gonzalez participated in the home invasion and these findings are not clearly erroneous. The acts of the defendants were acts in furtherance of the conspiracy and reasonably foreseeable to them. Accordingly, we affirm their sentences.

E.      21 U.S.C. § 851

At sentencing, Diaz moved to strike the 21 U.S.C. § 851 notice of sentence enhancement filed by the government, claiming it was defective because it lacked specificity and this court requires strict compliance with the § 851 notice provisions. The district court denied his motion, stating that the government remedied its original lack of specificity by subsequently filing a discovery response. *See United States v. Belanger,* 970 F.2d 416 (7th Cir.1992) (government's "Notice of Intention to Seek Enhanced Penalty" may have been insufficient by itself, but when considered together with the government's "Notice of Intent to Offer Evidence," it met requirements of § 851). Diaz contends that the district court erred in denying his motion because the notice was defective since it failed to state any previous convictions upon which the government intended to rely. Alternatively, Diaz argues that the district court failed to make the appropriate inquiry

15

required by § 851(b). The government concedes that its initial notice was deficient, but it argues that the supplemental discovery response remedied the problem. We disagree.

A recent opinion of this court disposes of this issue. *See United States v. Rutherford,*. 175 F.3d 899 (11th Cir.1999). As we stated in *Rutherford,* "[r]equiring a defendant to combine a vague enhancement notice with an unrelated pleading that is often filed without the purpose of sentence enhancement is inconsistent with strict compliance." 175 F.3d at 904. The government's supplemental discovery response is not sufficient to remedy its failure to follow the strict requirements of § 851. Accordingly, we vacate Diaz's sentence.

F.      Gonzalez's Weapon Possession

Gonzalez assails the district court's admission, pursuant to Fed.R.Evid. 404(b), of his 1982 conviction in New York for criminal possession of a weapon in the third degree. He contends that this evidence was not probative to any issue in the trial. Furthermore, Gonzalez contends that any probative value that the evidence may have had was substantially outweighed by its prejudicial effect. The district court disagreed and held that the prior firearms conviction was relevant to prove issues related to the instant firearms charge set forth in Count III.

We agree. In our view, the evidence tended to make it more likely that Gonzalez in fact possessed a gun. Second, the prior act made it more likely that the gun was to be used to threaten Camacho. Additionally, the prior weapons conviction refuted the contentions by Gonzalez and a coconspirator that he did not possess a .38 caliber firearm. Accordingly, the district court did not abuse its discretion in allowing the prior weapons conviction into evidence.

CONCLUSION

We affirm Buitrago and Gonzalez's convictions and sentences. We reverse Santiago and Claudio's convictions on Counts II due to insufficient evidence, and on Count III due to a *Bruton* violation. We reverse Diaz's conviction on Count III and his attendant sentence but affirm his remaining convictions. We also remand Diaz's case for re-sentencing in light of the government's failure to strictly adhere to the requirements

of 21 U.S.C. § 851.  We vacate the district court's imposition of fines and orders of deportation as to all defendants.

AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED.