[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 17, 2006
THOMAS K. KAHN
CLERK

Nos. 06-11675, 06-11676
Non-Argument Calendar

_____

D. C. Docket No. 05-00099-CR-FTM-33-DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANCISCO RAYON SANTIAGO

Defendant-Appellant.

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CLAUDIA PEREZ GARCIA,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

**(October 17, 2006)**

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

In this consolidated appeal, co-defendants Claudia Perez Garcia and Francisco Rayon Santiago challenge their sentences imposed after they pled guilty to transporting illegal aliens for profit, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). After review, we affirm.

## I.  BACKGROUND

### A.    Offense Conduct

Carmela Altamirano-Vasquez wired $2,000 to an account to have her 15-year-old daughter, Olimpia, smuggled from Mexico into the United States. After being smuggled into the United States through California, Olimpia was placed in a van containing approximately 14 to 16 other illegal aliens and was transported by Defendants Garcia and Santiago to Florida.

Vasquez had been told that her daughter would be dropped off at a gas station. When the van arrived at the gas station, however, Defendant Garcia

2

informed Vasquez that Vasquez would have to pay an additional $780 dollars for delivery of Olimpia. When Vasquez refused to pay the extra money, Defendant Garcia drove the van away with Olimpia still inside.

Vasquez pursued the van in her own vehicle. Using a cell phone, Defendant Garcia called Vasquez's residence and told the woman who answered that Garcia was driving between 80 and 90 miles an hour and would throw Olimpia out of the van if Vasquez did not stop following her. Vasquez called 911 and reported that her daughter had been kidnapped. Law enforcement stopped the van and found Defendant Garcia, Defendant Santiago and four illegal aliens, including Olimpia, inside.

After being arrested, Defendants Garcia and Santiago admitted to Immigration and Customs Enforcement agents that they knew the passengers in the van were illegal aliens. Garcia further admitted that she had been paid $800 and that she would have received an additional $800 upon completion of the trip. Defendant Garcia told law enforcement that she and Defendant Santiago were not given a list of which aliens still owed money and that the aliens were supposed to tell them.

Defendant Santiago admitted being a driver of the van and that he would have been paid $1,000 upon completion of the trip. Santiago also admitted to

having made similar trips two or three times in the past.

**B.      Guilty Pleas**

In separate hearings, both Defendants Garcia and Santiago pled guilty to transporting "an illegal alien or aliens" knowing that the "alien or aliens" had illegally entered the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

At Defendant Garcia's plea hearing, the magistrate judge advised Garcia that she faced a ten-year penalty for each alien transported and thus could face 30 to 40 years' imprisonment.  See 8 U.S.C. § 1324(a)(1)(B)(i).  The magistrate judge noted the possible application of a 20-year statutory enhancement based on endangering an alien and asked the government's position.  See id. § 1324(a)(1)(B)(iii).  The Assistant United States Attorney ("AUSA") representing the government, who was standing in for the AUSA assigned to Garcia's case, stated that he did not believe that the aliens had been endangered or that the United States would be seeking that particular statutory enhancement.  Based on the AUSA's response and the fact that three aliens had been mentioned in Defendant Garcia's plea agreement, the magistrate judge found that the statutory maximum sentence was 30 years. Defendant Garcia disagreed with the magistrate judge's calculation of the statutory maximum because the indictment had not specifically identified more than one alien.  Accordingly, the magistrate judge allowed Garcia a one-day continuance to

4

contemplate her plea.

At the continuation of the plea hearing, the government's main counsel was present. This AUSA clarified that, although the government was not seeking a statutory enhancement based on endangerment, it would likely be asking for a guidelines enhancement. The magistrate judge restated that Defendant Garcia's statutory maximum sentence was 30 years. Garcia persisted in her guilty plea, which was accepted by the district court on the magistrate judge's recommendation.

At his plea hearing, Defendant Santiago admitted to driving with Defendant Garcia from California to bring illegal aliens to Florida. Santiago also clarified that there were two illegal aliens in the van when it was stopped by law enforcement. As with Garcia's plea hearing, the parties debated the appropriate statutory maximum sentence. Ultimately, the magistrate judge found that the maximum penalty was 30 years. Santiago expressed his desire to persist in his guilty plea, but noted that the indictment had failed to allege the specific number of aliens involved. The magistrate judge recommended that the district court accept Santiago's plea, and the district court did so.

## C.    Sentencing Hearing

The presentence investigation reports ("PSI") recommended holding

Defendants Garcia and Santiago accountable for transporting at least 14 illegal aliens based on law enforcement interviews with Olimpia and the other two illegal aliens found in the van. The PSIs applied a three-level offense level increase pursuant to U.S.S.G. § 2L1.1(b)(2) because Garcia and Santiago had transported between 6 and 24 illegal aliens. The PSIs also made a two-level victim-related adjustment pursuant to U.S.S.G. § 3A1.3 because Olimpia had been physically restrained when Garcia had driven off without delivering her to her mother. The PSIs calculated a guidelines range of 15 to 21 months for each defendant.

Citing United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), Defendants Garcia and Santiago objected to the three-level increase for the number of aliens transported. Garcia and Santiago also objected to the victim-related adjustment. The defendants did not object to the portions of the PSIs containing the facts of the offense.

The district court overruled all of the defendants' objections and adopted the facts and guidelines calculations in the PSI. As to Defendant Garcia, the district court noted the advisory guidelines range of 15 to 21 months, stated that it had considered all the factors in 18 U.S.C. § 3553(a) and found that a 21-month sentence was appropriate. The district court explained that it sentenced Garcia at the high end of the advisory guidelines range because Garcia had "preyed on the

6

wishes of people who wanted to come to the United States." The district court noted in particular the cruel way in which Garcia had treated Olimpia and her mother.

As to Defendant Santiago, the district court again noted the advisory guidelines range and stated that it had considered the § 3553(a) factors. The district court sentenced Santiago to a 17-month sentence. The district court explained that it had imposed this particular sentence for deterrence purposes and because his co-defendant, Garcia, was more culpable. The district court stated, however, that Santiago did not deserve a sentence at the low end of the guidelines range because his actions had preyed on the vulnerabilities of others and were done for profit. Garcia and Santiago appealed.

## II. DISCUSSION

### A. Booker

Defendants Garcia and Santiago first argue that the district court violated their constitutional rights under Booker when it enhanced their sentences based on the number of aliens transported.[1] This argument is without merit. It is well settled that, as long as a district court applies the guidelines in an advisory fashion,

---

[1]Garcia and Santiago timely raised their Booker objections to the enhancement based on the number of aliens, and thus, we review their claims on appeal de novo, but reverse only for harmful error. United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005).

which the district court did in this case, it is not precluded from making additional factual findings, under a preponderance-of-the-evidence standard, that go beyond the facts charged in the indictment and admitted by the defendant. See United States v. Chau, 426 F.3d 1318, 1323-24 (11th Cir. 2005). Additionally, Garcia and Santiago did not make a factual objection to the number of aliens alleged in the PSI, effectively admitting this fact for Booker purposes. See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005). Accordingly, there is no Booker error.

## B. Apprendi

Defendant Santiago also argues that the district committed error under Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), by increasing his statutory maximum based on the number of aliens transported, a fact not alleged in the indictment. See Blakely v. Washington, 542 U.S. 296, 303-04, 124 S. Ct. 2531, 2537 (explaining that the "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely based on the facts reflected in the jury verdict or admitted by the defendant" and not additional judge-made findings (emphasis removed)). The district court did not commit Apprendi error. During his plea colloquy, Santiago admitted that there were two aliens in the van when it was stopped by law enforcement. Thus, the ten-year penalty applied to each alien,

8

resulting in a 20-year statutory maximum.  See 8 U.S.C. § 1324(a)(1)(B)(i).  The

facts found by the district court, namely that 14 aliens were transported, did not

increase Santiago's sentence above the statutory maximum authorized by

Santiago's admitted facts.  Indeed, Santiago's 17-month sentence was well below

the ten-year statutory maximum that would have applied had Santiago not made

that admission.

**C.      Restrained Victim Enhancement**

Garcia and Santiago also challenge the district court's use of the restrained

victim enhancement, pursuant to U.S.S.G. § 3A1.3.[2]  Under U.S.S.G. § 3A1.3, the

district court may increase a defendant's offense level by two if a victim was

"physically restrained" in the course of the offense.  U.S.S.G. § 3A1.3.  "Physically

restrained" means the "forcible restraint of the victim such as by being tied, bound,

or locked up."  U.S.S.G. § 1B1.1, comment. (n.1(K)).  The use of the modifier

"such as" in this definition indicates that the illustrations of physical restraint are

listed by way of example rather than as limitations.  See United States v. Gonzalez,

183 F.3d 1315, 1327 (11th Cir. 1999) (concluding that forcibly holding victims at

gunpoint constituted physical restraint), overruled on other grounds, United States

---

[2]We review a sentencing court's findings of fact for clear error and the application of the guidelines to those facts de novo.  United States v. Behr, 93 F.3d 764, 765 (11th Cir. 1996).

v. Diaz, 248 F.3d 1065 (11th Cir. 2001). We have construed the definition of "physically restrained" in § 1B1.1 to include a situation in which the victims were held against their will, were left with no alternative but to comply with the defendant and had no effective way of leaving. See United States v. Vallejo, 297 F.3d 1154, 1167 (11th Cir. 2002) (involving victims held while being forced to sign documents even though the victims were permitted to move between a club and a restaurant next door).

Here, the district court did not clearly err in applying the § 3A1.3 enhancement. Instead of delivering Olimpia – a 15-year-old illegal alien – to her mother at the gas station as arranged, Garcia drove away with Olimpia in order to extort more money from her mother. Garcia also threatened to throw Olimpia out of the van if her mother did not stop following the van. Garcia's actions and threats effectively prevented Olimpia from leaving the van and joining her mother. Garcia's argument that Olimpia was not in danger during these events is irrelevant because whether Olimpia was physically restrained within the meaning of § 3A1.3 does not turn on whether the victim was in danger, but on whether the victim was unable to leave.[3]

---

[3]We also reject Garcia's argument that the government represented in the trial court that it would not seek the restrained victim enhancement. The government never represented that it would not seek the § 3A1.3 enhancement. Rather, it stated that it did not think that the statutory penalty for endangerment, 8 U.S.C. § 1324(a)(1)(B)(iii), applied. In any event, the district court was

10

Furthermore, the district court did not clearly err in attributing Garcia's conduct to Santiago because such conduct was reasonably foreseeable given the nature of the offense. See U.S.S.G. § 1B1.3(a)(1)(B), cmt. n.2 (explaining that one defendant in a bank robbery is held accountable for second defendant's assaulting or injuring a victim because such conduct was reasonably foreseeable "given the nature of the offense"). Garcia and Santiago agreed to transport illegal aliens, a scared and vulnerable group, across the country in exchange for money. As part of this plan, Garcia and Santiago were required to collect money from the aliens upon delivering them to their destination. These circumstances created an environment ripe for extortion.

**D.    Double Counting**

Finally, Garcia argues that her 21-month sentence was excessive because it was based on "double enhancements for the same offense."[4] "'Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully

---

required to calculated Garcia's guidelines range based on all relevant conduct that occurred during the commission of the offense regardless of the government's representations. See U.S.S.G. § 1B1.3(a).

[4]Generally, we review de novo a claim of double counting. United States v. Matos-Rodriguez, 188 F.3d 1300, 1310 (11th Cir. 1999). While Garcia did object to a sentence at the high end of the guidelines range, she did not clearly make a double counting objection. Thus, her claim on appeal is reviewed only for plain error. See United States v. Neely, 979 F.2d 1522, 1523 (11th Cir. 1992).

11

accounted for by application of another part of the Guidelines.'" United States v. Dudley, ___ F.3d ___, 2006 WL 2571020, at *4 (11th Cir. Sept. 8, 2006) (quoting Matos-Rodriguez, 188 F.3d at 1309). Here, no double counting error occurred.

Garcia's sentence was enhanced based on two separate kinds of harm – the number of aliens she transported and her physical restraint of Olimpia. Neither of these enhancements contained a harm that was fully taken into account by the other. Furthermore, the fact that the district court sentenced Garcia at the high end of the applicable guidelines range does not mean that Garcia's sentence was enhanced again. The district court has discretion to sentence anywhere within or outside the applicable guidelines range so long as that sentence is reasonable. We note, in any event, that the district court's reasons for imposing a sentence at the high end of the range, namely that Garcia had "preyed" on vulnerable illegal aliens and treated both Olimpia and her mother cruelly, were not fully taken into account as part of either guidelines enhancement.

### III. CONCLUSION

For these reasons, we affirm Garcia's 21-month sentence and Santiago's 17-month sentence.

**AFFIRMED.**